743 So.2d 141 (1999)
Jeffrey SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2194.
District Court of Appeal of Florida, Fourth District.
October 13, 1999.
*142 Jeffrey H. Garland of Kirschner & Garland, P.A., Fort Pierce, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Debra Rescigno, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
Appellant was convicted of kidnaping, burglary of a dwelling with a battery, and sexual battery with threat of force. We reverse because the trial court erred in admitting evidence that he was involved in other similar crimes.
The crime with which appellant was charged occurred on December 28, 1996, about 2:00 A.M. The victim, who was fifteen, was awakened by finding a man armed with a knife putting a hand over her mouth, telling her not to scream or he would kill her. He also told her the same thing was happening to her parents in another bedroom, but that if she complied, her parents would not be hurt. The victim was sexually assaulted in her house, taken outside by the intruder, and sexually assaulted again.
At trial the court admitted, over appellant's objection, evidence of other crimes, under Williams v. State, 110 So.2d 654 (Fla.1959), and section 90.404(2)(a), Florida Statutes. Ehrhardt, Florida Evidence, § 404.10 (1998 ed.), explains the purpose for which this evidence was admitted in this case:
Evidence of other crimes, acts or wrongs is admissible to prove identity. The most common basis of proving the identity of the person who committed the crime in question is from evidence that collateral crimes were committed by the use of a distinctive modus operandi which was the same as that used in the *143 crime in question. Proof that the defendant committed the other crimes provides a basis for an inference that the defendant committed the crime in question. The fact that the defendant is identified as having committed a prior crime does not, by itself, mean that the evidence is relevant. The probative value comes from the fact that the collateral crimes were committed with a unique modus operandi which was the same as that used in the crime in question; therefore, it may be inferred that the same person committed both crimes. When that evidence is coupled with an identification of the defendant as the person who committed the prior crime, the evidence is relevant.
The trial court admitted evidence of four other incidents which occurred during the next several weeks after the date of the crime charged. The first occurred thirty days later on January 27, 1997, when, at 1:40 A.M., the alarm went off in the victim's house. Her father observed a person running away and found a broken Jalousie window. On January 28, 1997 at 6:09 A.M. the alarm went off again with another attempted entry through the same Jalousie. A detective then installed a special silent alarm which went off on January 31, 1997, but there was no evidence of an attempted entry.
The problem with the admission of the January, 1997 incidents is that the appellant was not identified in connection with any of them. Before evidence of collateral crimes can be admitted under Williams, there must be clear and convincing evidence that the defendant committed the crimes. State v. Norris, 168 So.2d 541, 543 (Fla.1964), and Audano v. State, 641 So.2d 1356, 1359 (Fla. 2d DCA 1994). The trial court thus erred in admitting that evidence. Even if appellant had been identified, there was nothing unique or distinctive about those incidents which would make them admissible under Williams.
The last incident occurred on February 1, 1997 when, at 3:45 A.M., a different victim, who was sleeping in the same room as her fiancee, was awakened by someone kissing her. The intruder then put his hand over her mouth and told her not to wake her boyfriend or he would kill him. Her fiancee then awoke and the intruder ran. At that same time a detective had been staking out the first victim's residence, and, about 4:00 A.M., he heard glass breaking and saw someone looking into a door at the back of the house. As the detective approached the house he lost sight of the prowler, but found footprints leading to the south. He called to request that the road be closed off.
A few minutes later another officer observed a vehicle on which, as it passed the officer, the lights were turned off. The driver then sped away. Ultimately the car was stopped and the driver identified as the appellant. The appellant had in his possession an opened pocket knife, and there was a tire tool on the front passenger seat. The tool matched marks found on french doors on the house of the second victim. Shoe marks at that house were consistent with the shoes worn by appellant.
The distance between the homes of the first victim and the second victim was seven to ten minutes driving time. The first victim described the intruder as taller than she and stocky. The detective who observed the intruder at the unsuccessful break-in attempt on February 1st described the intruder as about five feet eight inches tall. The fiancee of the second victim described the intruder as average height and medium build. Although the first victim did not get a good look at her assailant, she did pick appellant's picture from a photo line up as the person "most like" her assailant. The second victim was unable to make an identification from the photo line up, but at the police station inadvertently saw the defendant and immediately broke into tears, telling *144 one of the officers that she believed that he was her assailant.
We conclude that the events of February 1 were sufficiently unique or distinctive as to be admissible as Williams rule evidence. Both the crime charged and the February 1 events involved: (1) early morning burglaries, (2) sexual assaults or attempted sexual assaults on sleeping women who the intruder knew were not alone, (3) the intruder placing his hand over the victim's mouth and (4) threatening to harm other occupants of the home if the victim did not cooperate. Unlike the other incidents, appellant was identified in connection with the events occurring on February 1, 1997.
The state argues that the admission into evidence of the incidents occurring on January 27, 28 and 30, in which there was no identification of appellant, was harmless. We do not agree. Erroneous admission of evidence of collateral crimes is presumed harmful. Castro v. State, 547 So.2d 111 (Fla.1989). When similar fact evidence of other uncharged crimes is erroneously admitted it is "inherently prejudicial to a criminal defendant's right to a fair trial." Thomas v. State, 599 So.2d 158, 162 (Fla. 1st DCA 1992). See also Paul v. State, 340 So.2d 1249, 1250 (Fla. 3d DCA 1976). Because a fair trial is a basic requirement of due process, Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965), State v. DiGuilio, 491 So.2d 1129 (Fla.1986), applies and requires reversal. We have considered the other errors raised by appellant and find them to be without merit.
Reversed.
STONE and STEVENSON, JJ., concur.