829 So.2d 901 (2002)
Floyd Thomas ROBERTSON, Petitioner,
v.
STATE of Florida, Respondent.
No. SC01-890.
Supreme Court of Florida.
October 10, 2002.
*904 Bennett H. Brummer, Public Defender, and Manuel Alvarez, Assistant Public Defender, Eleventh Judicial Circuit, Miami, FL, for Petitioner.
Robert A. Butterworth, Attorney General, Michael J. Neimand, Criminal Appeals, Bureau Chief, and Margaret A. Brenan, Assistant Attorney General, Miami, FL, for Respondent.
PARIENTE, J.
We have for review Robertson v. State, 780 So.2d 106 (Fla. 3d DCA 2001) (en banc), a decision from the Third District Court of Appeal that misapplies this Court's holding in Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999), and is in conflict with the opinion of the First District Court of Appeal in State Dept. of Revenue ex rel. Rochell v. Morris, 736 So.2d 41, 42 (Fla. 1st DCA 1999), regarding when an appellate court may uphold a lower court ruling on an alternative ground not considered by the lower court. The Third District's decision also misapplies this Court's opinions in Jordan v. State, 107 Fla. 333, 144 So. 669, 669-70 (1932), and Foy v. State, 115 Fla. 245, 155 So. 657, 658 (1934), regarding the permissible scope of impeachment of a testifying defendant. Based on the conflict created by these misapplications, we have jurisdiction under article V, section 3(b)(3), of the Florida Constitution. See Florida Dep't of Transp. v. Juliano, 801 So.2d 101, 103 (Fla.2001) (citing Vest v. Travelers Ins. Co., 753 So.2d 1270, 1272 (Fla.2000)). For the reasons that follow, we quash the Third District's decision and remand for proceedings consistent with this opinion.

BACKGROUND
On September 16, 1996, Officer Dominguez was dispatched to an apartment to investigate a shooting. In the bedroom of the apartment shared by Robertson and the victim, Maria Nelson, Officer Dominguez observed Nelson lying on the bed. Nelson was conscious and breathing, but was not communicating. On the floor, about five feet from the bed, was a .40 caliber Ruger handgun with a bullet clip next to it. Officer Dominguez found an entrance wound in Nelson's chest and an exit wound in the middle of her back. Nelson ultimately died from the gunshot wound, and Robertson was charged with second-degree murder. Robertson's theory of defense was that the gun accidentally misfired while he was trying to clean it. The State's theory of the case was that Robertson intentionally shot Nelson during a domestic dispute.
At trial, the defense called Robertson to testify on his own behalf, and during the State's cross-examination of Robertson the following exchange took place:
[STATE] Q: In fact, you are familiar with large assault rifles, weren't [sic] you?
[DEFENDANT] A: Several models, yes sir.
Q: In fact, you purchased an AK-47, didn't you?
Defense counsel immediately objected on the basis that the question was "irrelevant" and "outside the scope of direct." The trial court overruled the objection and the State thereafter inquired:
Q: Isn't that correct, Mr. Robertson?
A: Yes, right after Hurricane Andrew I did.
Q: And in fact, isn't it a fact that you have threatened people with assault rifles before?
*905 Defense counsel again objected on the ground that this question was "totally outside the scope" of direct. The trial court again overruled the objection and the following exchange ensued:
[DEFENDANT] A: No.
[STATE] Q: You have never threatened anyone close to you with an AK-47, Mr. Robertson?
A: I have never threatened anybody close to me with a weapon, anybody period, with a weapon, sir.
The State argued that based on Robertson's negative response to these questions, Robertson's ex-wife should be allowed to testify on rebuttal that Robertson had threatened her with an AK-47 six years earlier. The trial court, over defense objection, concluded that in light of Robertson's answers to the State's questions during its cross-examination, the rebuttal testimony constituted proper impeachment. Robertson's ex-wife thereafter testified to an alleged incident in which she claimed Robertson threatened her with an AK-47. She testified that Robertson became enraged and pointed the AK-47 at her as she was running away, causing her to fear that she would be shot in the back. The incident was neither reported to the police nor investigated.
In closing argument, the State emphasized the significance of the rebuttal testimony:
Now you have to figure in the rest of your story, the anger, the fighting leading up to November 17th, the confrontation that was going to take place that night, her incredible fear of this man as told to Shirley Baumgartner, his anger.
For God sake, you saw his ex-wife on this witness stand because he lied to you on cross-examination about owning an AK-47 which is a huge assault rifle and threatening somebody close to you.
I asked him that question, and, boy, I gave him the opportunity. He could have said, yeah, there was this situation with my wife and, you know, I really didn't mean it, but no, I would never do that. I don't threaten anybody with guns, any type of guns, much less an AK-47.
So, Mrs. Robertson comes in here and tells you about a situation right after the hurricane where they were getting some building supplies and this defendant becomes enraged because mom and daughter can't help him bring in some heavy supplies from the car and what does he do? I am going to teach you a lesson. He goes back into the hallway, grabs the AK-47, slams a magazine, a clip into it and points it at her as she is running out the door and she thinks she is going to get shot in the back.
That gives you a little insight into what you are dealing with here.
(Emphasis supplied.)
The jury returned a verdict finding Robertson guilty of second-degree murder. Robertson appealed his conviction and sentence of life imprisonment, claiming as error the trial court's first permitting questions on cross-examination regarding prior alleged threats with the AK-47, and second allowing as impeachment Robertson's ex-wife's rebuttal testimony regarding the prior threat with the AK-47. The Third District initially reversed the trial court's decision, holding both that the prosecutor's questions regarding the alleged prior crime were improper and that Robertson's ex-wife's testimony was improper impeachment. See Robertson v. State, 780 So.2d 94, 96 (Fla. 3d DCA 2000). However, the Third District reviewed the case en banc and, on rehearing, affirmed the trial court's admission of Robertson's ex-wife's testimony. See Robertson, 780 So.2d at 113. The majority held that the evidence *906 was admissible as Williams[1] rule evidence, see Robertson, 780 So.2d at 113, a determination never made by the trial court and never asserted by the State on appeal.
The Third District's plurality opinion, in which four judges concurred, stated that the evidence was admissible as both impeachment and Williams rule evidence. See id. The remaining four judges dissented, explaining why Robertson's ex-wife's testimony was not admissible either as impeachment or under the Williams rule. See id. at 123-24 (Sorondo, J., dissenting).

MISAPPLICATION OF THE TIPSY COACHMAN DOCTRINE
The first issue we address in this case is whether the Third District majority, in concluding that the evidence that Robertson threatened his ex-wife with an AK-47 constituted permissible Williams rule evidence, erred in affirming the trial court on grounds neither raised by the State nor considered by the trial court. The State concedes that at no time, either before trial or on appeal, did it argue that the evidence that Robertson threatened his ex-wife with an AK-47 six years earlier was admissible under the Williams rule. The State's sole argument was that Robertson's ex-wife's testimony constituted proper impeachment because of the answers that Robertson gave in response to the questions the State asked him on cross-examination.
We start with the proposition that "[g]enerally, if a claim is not raised in the trial court, it will not be considered on appeal." Radio Station WQBA, 731 So.2d at 644. However, notwithstanding this principle "[i]n some circumstances, even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling." Id. (emphasis supplied).
This longstanding principle of appellate law, sometimes referred to as the "tipsy coachman" doctrine, allows an appellate court to affirm a trial court that "reaches the right result, but for the wrong reasons" so long as "there is any basis which would support the judgment in the record." Id. at 644-45.[2] As we explained in Radio Station WQBA, this Court has adhered to this principle on many other occasions. See id. (citing Applegate v. Barnett Bank, 377 So.2d 1150, 1152 (Fla.1979) ("The written final judgment by the trial court could well be wrong in its reasoning, but the decision of the trial court is primarily what matters, not the reasoning used. Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it.")); see also Muhammad v. State, 782 So.2d 343, 359 (Fla.2001) ("[T]he trial court's ruling on an evidentiary matter will be affirmed even if the trial court ruled for the wrong reasons, as long as the evidence or an alternative theory supports the ruling.").
The key to the application of this doctrine of appellate efficiency is that *907 there must have been support for the alternative theory or principle of law in the record before the trial court. Thus, following Radio Station WQBA, the First District in Morris, 736 So.2d at 42, correctly refused to affirm on an alternative ground not argued to the trial court, reasoning that "the record does not reflect an evidentiary basis sufficient to permit us to make a determination as to whether these defenses are applicable in the instant case." (Emphasis supplied.)
In the present case, the Third District improperly affirmed the admission of Robertson's ex-wife's testimony on the alternative Williams rule ground because there was no evidence in the record to support the Third District's holding that the previous threat was admissible under the Williams rule. Regarding the admissibility of Williams rule evidence, we have explained:
Similar fact evidence that the defendant committed a collateral offense is inherently prejudicial. Introduction of such evidence creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense.
Heuring v. State, 513 So.2d 122, 124 (Fla. 1987).
In affirming the trial court in this case, the Third District found the "evidence admissible as relevant under Section 90.404(2)(a), Florida Statutes (1997)." Robertson, 780 So.2d at 110. Section 90.404(2)(a) is the codification of the Williams rule and provides:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

Section 90.404(2)(b)1 also requires that the State file a notice of intent to rely on evidence of a defendant's prior misconduct:
When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.
The requirement of pretrial notice allows the trial court to make an initial determination of whether the Williams rule evidence is admissible. Before admitting Williams rule evidence, it is incumbent upon the trial court to make multiple determinations, including whether the defendant committed the prior crime,[3] whether the prior crime meets the similarity requirements necessary to be relevant as set forth in our prior case law,[4] whether the prior crime is too remote so as to diminish its relevance,[5] and finally, whether *908 the prejudicial effect of the prior crime substantially outweighs its probative value.[6] As the above-mentioned requirements suggest, the determination of whether evidence properly may be admitted as Williams rule evidence is a highly individualized, factually intensive inquiry. Moreover, even if the evidence is admitted pursuant to the Williams rule, a cautionary instruction is required when requested pursuant to section 90.404(2)(b)(2) so that the jury is specifically apprised of the limited purpose for which the jury is to consider the evidence:
When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not included in the indictment or information.
Because the State never filed a notice of intent pursuant to section 90.404(2)(b) and because the State never indicated it intended to introduce this evidence as Williams rule evidence,
the admissibility of the evidence in question was never litigated within the parameters of section 90.404(2)(a), Florida Statutes (1997). Because the matter was not at issue, defendant did not have an opportunity to present evidence or arguments against the admissibility of this evidence under the Williams rule.
Robertson, 780 So.2d at 118 (Sorondo, J., dissenting). Thus, the record as it existed was insufficient for the Third District to determine whether the evidence was properly admitted under the Williams rule. Because the matter was never litigated on the basis of the Williams rule, the trial court never made determinations as to whether clear and convincing evidence existed that Robertson committed the prior crime, whether the prior crime was substantially similar, or whether the prior crime was too remote so as to minimize any potential relevance. Further, as pointed out by this Court in Heuring, 513 So.2d at 123-24, where the evidence is being offered to prove absence of mistake or accident, the fact-intensive inquiry must include an analysis of the crime's remoteness as well as the absence of any intervening similar acts. Regarding remoteness, Judge Sorondo stated in his dissent:
In the present case, the record simply does not permit a full examination of the factors necessary to determine whether defendant's prior misconduct is too remote to be relevant. Assuming for the sake of argument that the introduction of a prior threat of violence against a different victim is admissible at all, it would be reasonable and relevant to explore whether there were any domestic relationships between defendant's previous marriage and his marriage to the victim in this case. The existence of intervening relationships without any threats of violence would certainly raise the possibility considered by the Supreme Court in Heuring that the prior misconduct "is no longer characteristic of the defendant."
Robertson, 780 So.2d at 120 (Sorondo, J., dissenting) (quoting Heuring, 513 So.2d at 124).
Moreover, because no notice was provided and because the State never attempted to seek the admission of this evidence on *909 the basis of the Williams rule, Robertson never received an opportunity to present evidence or make argument as to why the incident involving his ex-wife should not have been admitted under the Williams rule. In short, the record did not permit the Third District to affirm the trial court's admission of collateral crime evidence as Williams rule evidence. Thus, in so doing, the Third District improperly relied upon the "tipsy coachman" doctrine to affirm the trial court's admission of this evidence.
Finally, even if the record were sufficiently developed to allow affirmance on this alternate ground, we conclude as a matter of law that the Third District erred in holding that the testimony regarding a prior threat six years earlier against a different victim and involving a different weapon was admissible under the Williams rule. The Third District concluded that this evidence was admissible because "the critical issue at trial was whether the defendant accidentally shot" the victim. Robertson, 780 So.2d at 110. Thus, the Third District reasoned, and the State now contends, that the evidence of the prior threat was admissible to prove "absence of mistake or accident," which is one of the permissible purposes for the admission of "similar fact evidence" under the Williams rule, as codified in section 90.404(2)(a).
The State concedes, and we agree, that substantial similarity of crimes is a requirement when the evidence is sought to be admitted for the specific purpose of establishing absence of mistake or accident. See Duffey v. State, 741 So.2d 1192, 1196-97 (Fla. 4th DCA 1999). As we have explained,
[t]o minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses.
Heuring, 513 So.2d at 124. In this case, the crime with which Robertson was charged was the completed offense of murder against his girlfriend utilizing a handgun. The prior offense, assuming it occurred, involved a threat of violence against Robertson's former wife, involving an assault rifle. Neither the crimes, the weapons, nor the victims are similar. Indeed, we have been unable to find, and the parties have not cited, any cases in Florida where a prior threat against a different victim was admitted under the Williams rule to prove the absence of mistake or accident of the present offense. The out-of-state cases cited by the parties and cited in the Third District's majority opinion and dissent are illuminating in that where the prior acts involved different victims and different offenses, the prior criminal acts were uniformly excluded.[7] The *910 cases relied on by the majority involved either prior crimes against the same victim as the charged offense,[8] or the charged offenses and the prior offenses involved similar completed crimes of violence.[9] As stated by Judge Sorondo:
The defendant in this case was charged with the completed, violent offense of second degree murder. The prior, alleged misconduct was an offense that threatened violence. Although such a prior threat against the victim in this case, if not too remote, may have been *911 admissible to show intent and the absence of mistake or accident, the same cannot be said of a threat against another. Reducing these events to their simplest and most common formif the defendant had been charged with aggravated battery by punching his wife in the nose and breaking it, and he defended by claiming that he accidentally struck her while flailing his arms during an argument, under the majority's reasoning, evidence that the defendant had threatened to punch a former wife in the nose six years earlier would be admissible to rebut his claim of accident. As morally satisfying as this type of evidence may be, in my judgment, such evidence serves only to establish defendant's propensity to commit violent crimes.
Robertson, 780 So.2d at 121-22 (Sorondo, J., dissenting) (footnotes omitted). Accordingly, the Third District erred in applying the "tipsy coachman" doctrine because support for affirming the trial court on the alternative Williams rule basis was absent from the record. Furthermore, the record affirmatively shows that it would have been error for the trial court to have allowed the State to present, as Williams rule evidence, an alleged threat six years earlier involving a different victim and a different weapon to prove absence of mistake or accident.

IMPEACHMENT
We next turn to the issue of whether the evidence was properly admissible on the basis argued at trial by the State, and actually ruled on by the trial courtas impeachment evidence. Because the trial court and a plurality of the Third District relied upon impeachment as a basis for admitting the evidence that Robertson allegedly threatened his ex-wife with an AK-47, we deem it necessary to also explain why the evidence was impermissible impeachment under the facts of this case.
We begin with the interplay between Williams rule evidence and the rule regarding the impeachment of witnesses. As we have stated, section 90.404(2)(a) codifies Williams, and excludes prior crime evidence that is not relevant, and thus offered only to prove propensity or bad character. However, section 90.404(1), provides:
CHARACTER EVIDENCE GENERALLY.Evidence of a person's character or a trait of character is inadmissible to prove action in conformity with it on a particular occasion, except:
(a) Character of accused.Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the trait.
(b) Character of victim
. . . .
(c) Character of witness.Evidence of the character of a witness, as provided in ss. 90.608-90.610.
(Emphasis supplied.) The only section referred to within section 90.404(1)(c) that is pertinent in this case is section 90.608(5), Florida Statutes (1997), which provides:
Any party, including the party calling the witness, may attack the credibility of a witness by:
. . . .
(5) Proof by other witnesses that material facts are not as testified to by the witness being impeached.
Thus, even if the prior crime evidence is not relevant under section 90.404(2)(a), a testifying defendant may nonetheless open the door to the prior crime evidence by (1) offering a trait of the defendant's good character, see § 90.404(1)(a) (character of accused), or (2) inaccurately testifying to material facts, see § 90.404(1)(c) (character of witness), § 90.608(5) (contradiction on relevant facts).
*912 The Third District plurality reasoned in this case that by testifying on cross-examination that he had never threatened anyone with a gun, Robertson opened the door to questioning about his prior threats towards his ex-wife with the AK-47. See Robertson, 780 So.2d at 109. We disagree.
With regard to the impeachment of a defendant by showing bad character, this Court stated seventy years ago that the State may do so only if the defense opens the door to such impeachment by showing the defendant's good character:
The character of a person accused of crime is not a fact in issue, and the state cannot, for the purpose of inducing belief in his guilt, introduce evidence tending to show his bad character or reputation, unless the accused, conceiving that his case will be strengthened by proof of good character, opens the door to proof by the prosecution that his character in fact is bad. This salutary rule is not permitted to be violated by the state, even when the defendant offers himself as a witness. State v. Beckner, [194 Mo. 281,] 91 S.W. 892. And this is true, although a defendant offering himself as a witness is subject to impeachment just like any other witness so far as his status and character as a witness, not as a defendant on trial, is concerned. See Cross v. State, [96 Fla. 768,] 119 So. 380.
Jordan v. State, 107 Fla. 333, 144 So. 669, 669-70 (1932) (emphasis supplied) (parallel citations omitted). Two years later, this Court further explained that the State cannot open the door itself by asking impermissible questions on cross-examination:
[T]he prosecution in a criminal case cannot call witnesses to impeach the character of the defendant, unless the defendant puts it in issue. Nor can the prosecution accomplish the same forbidden end by indirection through pursuing a method of questioning defendant and his witness on cross examination that is principally designed, by means of innuendo and suggestions of general criminality on accused's part, to lead the jury to believe that the accused should be found guilty of the particular crime charged, because of his being suspected or accused of other offenses, or because of his connections or association with other accused persons under indictment for different crimes not constituting part of the charge on trial.
Foy v. State, 115 Fla. 245, 155 So. 657, 658 (1934) (emphasis supplied) (citations omitted).
By asking Robertson whether he had ever threatened someone with an AK-47, the State violated the principles of Jordan and Foy. In the present case, Robertson did not offer a trait of his good character. Thus, even though Robertson offered himself as a witness, and consequently was "subject to impeachment just like any other witness," Jordan, 144 So. at 670, Robertson did not open the door to a rebuttal of any character trait through evidence of an alleged prior crime. See § 90.404(1)(a); Foy, 155 So. at 658; Jordan, 144 So. at 669-70.
Moreover, regarding a defendant's testifying inaccurately to material facts, this Court has stated:
When the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends *913 to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief ....

Geralds v. State, 674 So.2d 96, 99 (Fla. 1996) (emphasis supplied) (quoting Coco v. State, 62 So.2d 892, 895 (Fla.1953)). Thus, to open the door, "the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled." Bozeman v. State, 698 So.2d 629, 630 (Fla. 4th DCA 1997); see also Mosley v. State, 739 So.2d 672, 676 (Fla. 4th DCA 1999) (explaining that the "opening the door" concept allows the cross-examination to reveal the whole story of a transaction only partly explained in direct examination).
In this case, the prosecutor's inquiry on cross-examination regarding Robertson's general experience with handling firearms was proper because Robertson's knowledge of firearms would tend to negate his theory of defense that the gun fired by accident. However, whether Robertson threatened (without shooting) someone in the past with an assault rifle does not "modify, supplement, contradict, rebut, or make clearer" either Robertson's defense that his actual shooting in this case was unintentional, or his testimony that he was not very familiar with the particular gun, a.40 caliber handgun that fired the shot that killed Nelson. See Geralds, 674 So.2d at 99.[10] Thus, Robertson did not open the door to evidence that he allegedly threatened his ex-wife six years before with an assault rifle by testifying inaccurately to material facts. See § 90.404(1)(c); § 90.608(5); Geralds, 674 So.2d at 99.
Despite the fact that Robertson did not open the door, either by offering a trait of his good character or by inaccurately testifying to material facts, the State improperly attacked Robertson's credibility on cross-examination by directly asking whether Robertson had threatened anyone with an assault rifle before the incident involved in this case. Thus, the State's argument that Robertson opened the door to questioning about the prior incident where he had threatened his ex-wife with a gun is sequentially inaccurate. The State cannot ask a series of impermissible questions concerning prior acts of misconduct on cross-examination, and then claim that the defendant opened the door by answering the impermissible questions.
It is critical for the courts to enforce this restriction on impeachment because the failure to do so would allow the State to circumvent the procedural requirement of section 90.404(2)(b)(1), which requires pretrial notice to the defendant when the State intends to introduce evidence of prior crimes. Because the State could not introduce the evidence of Robertson's alleged prior threat to his ex-wife as Williams rule evidence, the State cannot rely on the law of impeachment to introduce the same evidence through the back door by asking an impermissible question regarding an alleged prior crime.
Finally, we address whether the admission of this collateral-crime evidence constitutes reversible error. This Court has held that the erroneous admission of irrelevant collateral crimes evidence "is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated *914 as evidence of guilt of the crime charged." Castro v. State, 547 So.2d 111, 115 (Fla.1989) (quoting Straight v. State, 397 So.2d 903, 908 (Fla.1981)); accord Czubak v. State, 570 So.2d 925, 928 (Fla. 1990) (holding collateral crime evidence that defendant was an escaped convict was presumptively harmful). In this case, given the highly inflammatory nature of Robertson's ex-wife's testimony and the emphasis placed on it by the prosecutor in closing argument, the State is unable to establish beyond a reasonable doubt and we are unable to conclude that the admission of this collateral-crime evidence constituted harmless error. Accordingly, we quash the decision of the Third District and remand for a new trial consistent with this opinion.
It is so ordered.
ANSTEAD, C.J., SHAW, and QUINCE, JJ., and HARDING, Senior Justice, concur.
LEWIS, J., concurs in result only.
WELLS, J., dissents with an opinion.
WELLS, J., dissenting.
I dissent because this Court plainly does not have conflict jurisdiction in this case. I cannot read from the four corners of the Third District Court of Appeal's opinion a conflict with Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999), or any other case cited by the majority for conflict.
I believe it to be exceedingly important to the administration of justice in our state that this Court respect that it is a court of limited jurisdiction under Florida's Constitution. In Mystan Marine, Inc. v. Harrington, 339 So.2d 200, 201 (Fla.1976) (footnotes omitted), this Court made the essential point:
The jurisdiction of this Court extends only to the narrow class of cases enumerated in Article V, Section 3(b) of the Florida Constitution. Time and again we have noted the limitations on our review and we have refused to become a court of select errors. As we explained in Ansin v. Thurston, [101 So.2d 808, 811 (Fla.1958),] Article V uses the words "direct conflict" to manifest a "concern with decisions as precedents as opposed to adjudications of the rights of particular litigants."
This followed the clear, unequivocal statement in Nielsen v. City of Sarasota, 117 So.2d 731, 734-35 (Fla.1960):
The so-called "conflict jurisdiction" was not conveyed to the Supreme Court merely to convert it into a "court of selected errors" whereby the Justices of this Court could whimsically select cases for review in order to satisfy some notion that the case would be of such importance as to justify the interest or attention of this Court.
On the contrary, in order to sanctify the decisions of the Courts of Appeal with an aspect of finality, so essential to prevent any imbalance in the several echelons of the appellate process, the jurisdiction of this Court to exercise certiorari powers and to set aside the decisions of the Courts of Appeal on the conflict theory was expressly limited by the Constitution itself. [Ansin].
When our jurisdiction is invoked pursuant to this provision of the Constitution we are not permitted the judicial luxury of upsetting a decision of a Court of Appeal merely because we might personally disagree with the so-called "justice of the case" as announced by the Court below. In order to assert our power to set aside the decision of a Court of Appeal on the conflict theory we must find in that decision a real, live and vital conflict within the limits above announced.
*915 By accepting jurisdiction and rendering this opinion, the majority does precisely what these cases state that this Court is not to do.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] In Home Depot U.S.A. Co. v. Taylor, 676 So.2d 479, 480 (Fla. 5th DCA 1996), the Fifth District explained the derivation of the "tipsy coachman rule" as follows:

There is a rule used by courts of appeal which is called the "tipsy coachman" rule. It comes to us from Georgia, Lee v. Porter, 63 Ga. 345, by the way of our supreme court in Carraway v. Armour & Co., 156 So.2d 494 (Fla.1963).
The pupil of impulse, it fore'd [sic] him along,
His conduct still right, with his argument wrong;
Still aiming at honour, yet fearing to roam,
The coachman was tipsy, the chariot drove home;....
[3] See Acevedo v. State, 787 So.2d 127, 128-29 (Fla. 3d DCA 2001); Smith v. State, 743 So.2d 141, 143 (Fla. 4th DCA 1999); Smith v. State, 700 So.2d 446, 447 (Fla. 1st DCA 1997); Audano v. State, 641 So.2d 1356, 1359-60 (Fla. 2d DCA 1994); Malcolm v. State, 415 So.2d 891, 892 (Fla. 3d DCA 1982); Chapman v. State, 417 So.2d 1028, 1031 (Fla. 3d DCA 1982); State v. Norris, 168 So.2d 541, 543 (Fla.1964).
[4] See Chandler v. State, 702 So.2d 186, 194 n. 6 (Fla.1997); Heuring v. State, 513 So.2d 122, 124 (Fla.1987).
[5] See Duffey v. State, 741 So.2d 1192, 1197 (Fla. 4th DCA 1999) ("Under section 90.404(2)(a), the remoteness of a prior crime is one aspect of its relevance, its tendency to prove or disprove a material fact in issue."); see also Heuring, 513 So.2d at 123 (when faced with claim that prior crimes are too remote to be relevant, the trial court "must consider not the passage of time alone, but the effect of the passage of time on the evidence").
[6] See § 90.403, Fla. Stat. (1997); see also Williamson v. State, 681 So.2d 688, 696 (Fla. 1996).
[7] See Johnson v. State, 655 N.E.2d 502, 505 (Ind.1995) (where defendant shot a man who came to the defendant's door trying to collect money from customers of his children's newspaper routes, evidence that approximately two months before the homicide defendant pointed a gun at and threatened two people from the management of defendant's apartment complex was not admissible to disprove accident); Hoes v. State, 35 Md.App. 61, 368 A.2d 1080, 1085 (1977) ("The relevance of the prior conduct rests upon two things: the similarity of the method of assault and the fact that it was upon the same victim.... Had the prior assault been directed toward another victim, it would have had little or no relevance in evaluating the defendant's intent towards [his common-law wife]. Indeed, such an inference of intent to do that which was done would be greater the more often it had occurred, in like manner and to the same person. The similarity of nature and victim creates the relevant interrelationship.") (footnote omitted); Walker v. State, 116 Nev. 442, 997 P.2d 803, 807 (2000) ("[A]lthough the prior bad acts involve similar conduct toward the eventual victim in this case, we conclude that there is a crucial distinction between [the defendant's] prior conduct and the charged conduct. Namely, [defendant's] prior acts do not involved [sic] the firing or attempted firing of the weapon at [her husband]."); Knick v. Commonwealth, 15 Va.App. 103, 421 S.E.2d 479, 480-81 (1992) (where defendant, a deputy sheriff, claimed that he accidentally shot his wife when she pushed herself up from the floor where she was sitting and grabbed the barrel of the gun that he pointed at her in an effort to frighten her, evidence that the defendant had, on two occasions, assaulted his ex-wife by pulling his service revolver, pointing it at her head, and threatening to kill her was not admissible to disprove accident).
[8] See State v. Jacobs, 939 S.W.2d 7, 9-10 (Mo.Ct.App.1997) (where the defendant kidnapped the victim, evidence of prior domestic abuse by the defendant against the same victim was admissible to show intent and motive and to establish that victim accompanied defendant against her will); People v. Henson, 33 N.Y.2d 63, 349 N.Y.S.2d 657, 304 N.E.2d 358, 362-63 (1973) (in criminally negligent homicide case against the four-year-old victim's parents, testimony that the victim was not an accident prone child and that witnesses had observed the child on multiple occasions with different injuries admissible to refute the defense that the child had accidentally killed himself); People v. Hines, 260 A.D.2d 646, 690 N.Y.S.2d 66, 67 (1999) (prior incidents of domestic violence by defendant against the same victim admissible to show motive in the charged crime of criminal mischief for burning victim's clothes and residence); People v. Hawker, 215 A.D.2d 499, 626 N.Y.S.2d 524, 525 (1995) (allowing the victim's children to testify to defendant's prior assaults on their mother to show motive, intent, and that murder was continuation of pattern of his violence against her for her infidelity rather than merely product of intoxication or self defense); State v. Smith, 868 S.W.2d 561, 574 (Tenn.1993) (evidence of two prior unconvicted charges for assault were relevant and admissible to establish motive for murderevidence of past specific threats against the same victims were relevant to show malice, premeditation and defendant's state of mind).
[9] See Smith v. State, 232 Ga.App. 290, 501 S.E.2d 523, 529 (1998) (where defendant claimed that he accidentally lit his girlfriend on fire while she slept, evidence admissible that defendant previously attacked and cut his estranged wife with a machete to show intent and disprove defense of accident); Howard v. State, 228 Ga.App. 775, 492 S.E.2d 683, 685 (1997) (where defendant was charged with aggravated assault of his girlfriend, two prior incidents in which defendant, in a similar manner, beat and threatened the lives of two other girlfriends were admissible); Wetta v. State, 217 Ga.App. 128, 456 S.E.2d 696, 698 (1995) (testimony of defendant's prior girlfriend that he abused her after she tried to break up with him admissible to show defendant's state of mind where he allegedly battered victim after she asked him to leave her apartment); People v. Sims, 110 A.D.2d 214, 494 N.Y.S.2d 114, 119-20 (1985) (evidence of defendant's prior conviction for manslaughter and prior beatings of defendant's other children admissible to rebut the defense of accident where defendant's three-year-old daughter sustained multiple third degree burns); State v. Grubb, 111 Ohio App.3d 277, 675 N.E.2d 1353, 1356 (1996) (where defendant's defense to charge of domestic violence was self-defense and lack of intent, defendant's former wife's testimony of his abuse towards her was admissible to prove intent and lack of accident); State v. Clark, 179 Wis.2d 484, 507 N.W.2d 172, 175 (App.1993) (former girlfriend's testimony that defendant punched her in the face after she confronted him about dating other girls admissible where victim of charged crime alleged she was beaten by defendant after she confronted him about dating other girls to rebut defendant's claim that she had fallen and injured herself).
[10] Robertson's testimony that he was not familiar with the particular gun in this case is not the same as if he testified that he was not familiar with any guns at all. Cf. Davis v. State, 216 So.2d 87, 89 (Fla. 2d DCA 1968) (witness's testimony on direct that he never owned any firearm opened the door to impeachment on cross examination by the witness's past charge of exhibition of a dangerous weapon).