974 So.2d 1154 (2008)
Daniel Rivero GARCIA, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-2487.
District Court of Appeal of Florida, Third District.
February 13, 2008.
Bennett H. Brummer, Public Defender, and Marti Rothenberg, Assistant Public Defender, for appellant.
*1155 Bill McCollum, Attorney General, and Linda S. Katz, Assistant Attorney General, for appellee.
Before COPE, SHEPHERD, and SALTER, JJ.
PER CURIAM.
Daniel Garcia appeals his conviction and sentence for aggravated battery with a deadly weapon, a knife. We affirm.
The single issue presented here is whether the trial court reversibly erred in admitting, over objection, evidence of a prior threat made by the defendant eleven days before the aggravated battery.
Garcia's prior threat was made to his estranged wife. He showed her a knife and told her that he would use it on her if she was with another man. Eleven days later, she was with another man and Garcia used a knife on that man, the victim.
Before trial, Garcia moved for and obtained an order in limine precluding the State's introduction of evidence regarding the prior threat. Garcia argued that the prior threat involved a different person (the wife, as opposed to the ultimate victim) and that it was excludible under Williams v. State, 110 So.2d 654 (Fla. 1959).
At trial, Garcia testified in his own defense. In response to questions by his counsel, he testified that he still loved his wife and "[a]t the time of this incident, that was the reason for my being there, because I loved her." On cross examination, counsel for the State asked Garcia, "so on August 4, 2005 [the date of the stabbing], you were very much in love with your wife?" Garcia said again, "Exactly, that was the reason for my being there." The trial judge immediately conducted a sidebar and notified defense counsel that "the door was opened by [Garcia's] testimony," such that the State would be allowed to ask both Garcia and his estranged wife about the prior threat. Garcia's counsel duly objected. Garcia denied making the threat, but during rebuttal his estranged wife confirmed it. She testified that the week before the stabbing, Garcia "told me that I had to go back with him, that if I didn't he was going to kill me, and he pulled out a blade, a knife he had."
We review issues relating to the admissibility of evidence and the permissible scope of cross-examination for an abuse of discretion. Kulling v. State, 827 So.2d 311, 313 (Fla. 2d DCA 2002). In this case, Garcia invited cross-examination regarding his purported love for his wife. See § 90.612(2), Fla. Stat. (2006); Brown v. State, 756 So.2d 230, 232 (Fla. 3d DCA 2000) (finding that the defendant opened the door to questions about prior crimes during direct examination testimony). We find no abuse of discretion in allowing the cross-examination and additional testimony regarding the prior threat.
Affirmed.
SHEPHERD, J., concurring.
I join the majority opinion, pausing only to emphasize that the facts of this case are not governed by Williams v. State, 110 So.2d 654 (Fla.1959). In this case, the trial court made two distinct rulings: (1) before commencement of trial, the trial court granted Garcia's motion in limine to exclude the evidence of the purported prior threat; and (2) during trial, in a reversal of course, the trial court permitted the State to seek to elicit the same evidence from the testifying defendant (and thereafter his wife) after he spontaneously stated on cross-examination that if he knew his wife was seeing someone else, he would have left her alone. The pre-trial motion in limine was filed in response to the State's notice of intent to offer Williams *1156 Rule evidence, see § 90.404(2)(c)1, Fla. Stat. (2006), as was the ruling of the trial court made at that time. The mid-trial reversal of course was not.
The "Williams Rule" has been codified in section 90.404(2)(a), Florida Statutes (2007), which states:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
(emphasis added). The conditio sine qua non of a Williams Rule-based ruling is relevance. When a trial court admits evidence under the Williams Rule, the trial court is holding that the proffered evidence from a prior incident is similar enough to a current incident to be relevant to a material fact at issue in the case on trial. When a trial court sustains an objection made to a Williams Rule proffer, the trial court necessarily is finding that the proffered evidence is too dissimilar to be relevant, or  to put it another way  too dissimilar to be of use to a fact-finder in proving or disproving a material fact.
In this case, the trial court's grant of Defendant's pre-trial motion in limine was based upon: (1) the length of time between the threat and the incident; (2) the fact that the threat was made toward someone other than the victim; and (3) the fact that the victim was not known to the defendant at the time the threat was made. Although in my mind the first reason seems quite debatable since only eleven days elapsed between the proffered threat and the crime in this case, I agree with the trial court and the majority that the proffer was not admissible under Williams. See Robertson v. State, 829 So.2d 901 (Fla. 2002) (holding that a defendant's prior threat in 1993 to shoot his ex-wife with an assault rifle was inadmissible at his 1996 trial for killing his girlfriend with a handgun); see also Vincent v. State, 885 So.2d 963, 967 (Fla. 3d DCA 2004) (noting that the admissibility of Williams Rule evidence will depend on a fact-specific analysis in each case).
The in limine ruling, however, does not mean that the erstwhile-irrelevant threat could not become relevant as the trial unfolded. The testimony of each witness in a trial is ultimately a collection of assertions, subject to challenge by opposing counsel in one of two ways: (1) by presenting prior inconsistent statements that cast doubt on the witness's veracity; or (2) by eliciting other evidence that casts doubt on the assertions made by that witness. However, as often said, the cross-examiner ordinarily is limited in his or her presentation to the scope of the direct examination, including "the details of an event or transaction a portion only of which has been testified to on direct examination." Robertson, 829 So.2d at 912 (quoting Geralds v. State, 674 So.2d 96, 99 (Fla.1996)) ("[C]ross examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut, or make clearer the facts testified to in chief. . . .") (emphasis added); Coco v. State, 62 So.2d 892, 895 (Fla.1953). Accordingly, it ordinarily is impermissible for a cross-examining prosecutor to step beyond the scope of a direct examination to elicit evidence from a witness that otherwise would be barred under a Williams Rule analysis.
On the other hand, if the defense offer[s] misleading testimony or make[s] a specific factual assertion[,] the [S]tate has the right to correct [it] so that the jury will not be misled. Robertson, 829 So.2d at 913 *1157 (quoting Bozeman v. State, 698 So.2d 629, 630 (Fla. 4th DCA 1997)). Moreover, an answer given during this type of corrective cross-examination can, in a proper case, enable the scope of cross-examination to expand even more, especially where a defendant seeks to bolster his case with his own spontaneous material statements. That is the situation we have here, as evidenced by a fulsome recitation of the cross-examination of the defendant.
During direct examination in this case, Defendant testified that "[a]t the time of [the stabbing] . . . my reason for being [at my wife's home was] because I loved her[.]" This statement makes two primary assertions: first, that Defendant loved his wife, and second, that Defendant's love for his wife was the reason he was at her house on the day he stabbed the victim. The statement also allowed for a "corrective cross-examination" by the prosecutor. The exchange occurred as follows:
Q [By the prosecutor] So on August 4th, 2005, you were very much in love with your wife?
A [By Defendant] Exactly, that was my reason for being there.
Q And you wouldn't want anybody else to even like her, would you?
A No, it's not that I didn't want [sic]. I was married to her and I only wanted to reconcile with her.
Q And you thought she was yours?
A She was married to me.
Q And she was nobody else's because she was married to you?
A Well, if she's married to me, of course, she's my woman.
Q But only your woman?
A I can't share her with anybody else.
Q Were you afraid at some point you might have to share her with somebody else?
A No, never.
Q You weren't living together, were you?
A But we were married, that would happen and then we would reconcile.
Q Is it fair to say that on August 4th, 2005, you would have done anything to keep your wife?
A No, not anything. If she would have told me the truth and she would have said that she was hanging around with somebody else, I would have left her alone.
(emphasis added). At this point, the trial court called counsel sidebar and informed the defense that, "after that testimony, I have to let [the prosecutor] go into the statement[,]" and that "[a]s far as the door was opened by your client's testimony, I'm allowing him to get into [the evidence of the prior threat]."[1] This was a proper mid-course correction by the trial court and a correct ruling made at the time, quite apart from and distinct from the original pre-trial Williams Rule decision.
Although I find it questionable whether Garcia's general averments of love for his wife were sufficient to open the door to the highly prejudicial, previously excluded evidence of the prior threat  presumably most defendants in similar circumstances would pine over his or her spouse in a trial of this type  Garcia's final statement, "If she would have told me the truth . . ., I *1158 would have left her alone" (emphasis added), constituted a dramatic additional "factual assertion which the [S]tate had the right to correct so the jury [was] not [ ] misled." Robertson, 829 So.2d at 913. The State's proffered evidence that "approximately [eleven] days before the alleged aggravated battery, the defendant displayed a knife to [his wife and said] that he . . . would use the knife on her if he sees her with someone else" was directly admissible to correct Garcia's assertion.
NOTES
[1] Defense counsel made no objection to the trial court's apparent unilateral decision to call the sidebar, see, e.g., Lee v. State, 789 So.2d 1105, 1106 (Fla. 4th DCA 2001) ("The law in Florida expressly prohibits a judge from becoming an advocate for either party's position."), although it should be noted that, during the course of the in limine hearing, the prosecutor did ask the trial court if it would "revisit [the ruling] after some testimony [was] taken[,]" with the court responding, "I will listen to it."