PARIENTE, J.,
dissenting.
Without the collateral crimes, the evidence connecting Durousseau to the murder of Tyresa Mack was that he had sex with her shortly before she was murdered (Durousseau’s DNA was found inside her), he was seen in the vicinity of her apartment around the time-frame she was likely murdered, and he denied knowing her when questioned by the police. Durous-seau’s DNA was not found on the cord wrapped round Mack’s neck, and there was no other physical evidence tying him to the murder. Thus, the admission of the collateral murders of Nikia Kilpatrick and Shawanda McCallister was critical to identifying Durousseau as Mack’s murderer.
I dissent because in my view the trial court failed to determine whether there was clear and convincing evidence that Durousseau committed the collateral crimes at issue in this case — the required threshold inquiry before admitting collateral crime evidence as proof of identity. Instead, the trial court found only that the similarities between the crimes were “sufficiently clear and convincing” — which I conclude resulted in impermissible bootstrapping. Further, in my view, there was not clear and convincing evidence established in this record that Durousseau committed one of the collateral crimes without *565 reliance on the similarities between the collateral crime and the crime in question.
While substantial similarity is a critical determination before the collateral crime is admitted, the trial court must first make an initial and separate determination of whether the defendant in fact committed the collateral crimes. Before admitting collateral crime evidence, the trial court must make the following inquiries:
whether there is sufficient evidence that defendant committed the collateral crime; whether the collateral crime meets the similarity requirements necessary to be relevant; whether the collateral crime is too remote, so as to diminish its relevance; and whether the prejudicial effect of the collateral crime substantially outweighs its probative value.
Peterson v. State, 2 So.3d 146, 153 (Fla.) (citing Robertson v. State, 829 So.2d 901, 907-08 (Fla.2002)), cert. denied, — U.S. —, 130 S.Ct. 208, 175 L.Ed.2d 144 (2009). The first inquiry is whether the defendant committed the collateral crime, which the State must establish by clear and convincing evidence. McLean v. State, 934 So.2d 1248, 1256 (Fla.2006) (“Before allowing Williams rule evidence to be presented to the jury, the trial court must find that the State has proved that the defendant committed the collateral acts by clear and convincing evidence.”). To satisfy the clear and convincing standard,
the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and explicit and the witnesses must be lacking in confusion as to the facts in issue. The evidence must be of such weight that it produces in the mind of the trier of fact afirin belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.
Acevedo v. State, 787 So.2d 127, 130 (Fla. 3d DCA 2001) (quoting Slomowitz v. Walker, 429 So.2d 797, 800 (Fla. 4th DCA 1983)); see also Hernandez v. State, 16 So.3d 336, 340 (Fla. 4th DCA 2009) (“To meet the clear and convincing standard, ‘[t]he evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy.’ ” (quoting J.F. v. Dep’t of Children & Families, 890 So.2d 434, 439 (Fla. 4th DCA 2004))). This inquiry is distinct from the second inquiry, which is whether the collateral crime is similar enough to be relevant.
The majority sidesteps the first inquiry by stating that the evidence established that Durousseau committed substantially similar crimes on two other occasions without explicitly considering whether there was clear and convincing evidence that he committed the two prior crimes. This is particularly problematic in this case because the trial court never determined that there was clear and convincing evidence that Durousseau committed the collateral crimes. Instead, the trial court admitted the evidence, stating:
What the state can, I believe, prove at trial if this evidence is allowed in is that we have three young women in their early 20’s, all black, all young mothers, all in similarly struggling situations, all found dead with home use wire wrapped around their necks, all with the DNA of Mr. Durousseau somewhere on or around them person and two of which or at least one of which without question he was seen with. I believe the state has shown the Williams Rule is sufficiently — not only relevant but that the simi *566 larities are sufficiently clear and convincing and that it should be admitted.
(Emphasis added.) Thus, in finding that the similarities between the crimes were “sufficiently clear and convincing,” the trial court impermissibly conflated two separate requirements that must be found before a trial court can admit evidence of a collateral crime: (1) that there was clear and convincing evidence that the defendant committed the collateral crime; and (2) that the collateral crime meets the similarity requirements necessary to be relevant.
The State concedes that clear and convincing evidence must establish that the defendant committed the collateral crime. However, the State asserts that in cases of “serial murderers,” it needs to rely on the similarities between the crimes as proof that the defendant committed the collateral crime. However, this conflation of the requirements for admission of the evidence is in essence an attempt to “bootstrap” similarities between crimes to prove that the defendant committed the collateral crime — which is impermissible because the collateral crime must be proven independent of its similarity to the crime for which the defendant is being tried. See Acevedo, 787 So.2d at 130 (“[T]he State’s attempt to bootstrap the similarities of the 1995 fire to those of the 1971 fire in order to prove that the defendant started the 1971 fire was equally inappropriate.”). Allowing a trial court to admit collateral crime evidence solely on the basis of the similarity of the crimes makes it possible to admit the evidence without first connecting the defendant to the collateral crime through the presentation of clear and convincing evidence — a violation of our case law and due process.
The danger of admitting collateral crime evidence is that “the jury will convict the defendant based on prior crimes because these unrelated crimes would ‘go far to convince [individuals] of ordinary intelligence that the defendant was probably guilty of the crime charged. But, the criminal law departs from the standard of the ordinary in that it requires proof of a particular crime.’ ” Smith v. State, 866 So.2d 51, 71 (Fla.2004) (Pariente, J., concurring in part and dissenting in part) (quoting Jackson v. State, 451 So.2d 458, 461 (Fla.1984)). Here, the trial judge admitted evidence of collateral crimes without first determining that Durousseau committed those crimes. The danger is that the jury convicted Durousseau because it heard evidence of multiple similar crimes of which he was accused and not because the evidence proved that he committed any of them, let alone the charged crime beyond a reasonable doubt. Therefore, it is absolutely essential that the trial judge — and this Court — carefully examine the evidence of Durousseau’s guilt as to each prior crime before concluding that it can be used as evidence in this case.
In the present case, there is not clear and convincing evidence established in this record that Durousseau committed one of the collateral crimes — the Kilpatrick murder — without reliance on the similarities between the collateral crimes and the charged crime. The evidence linking Du-rousseau to the murder of Kilpatrick in late December 2002, without reference to the other murders, is the following: Du-rousseau met Kilpatrick in the fall of 2002; he had sex with Kilpatrick shortly before her death (DNA matching Durousseau at eight of thirteen loci was found inside her); he was in the vicinity of her apai’tment complex between the time she was last seen alive and the time her body was found — a span of two to three days; and he denied knowing her when questioned by the police. There is no other evidence connecting him to her murder — for example, his DNA was not found on the cord *567 used to strangle her. This falls short of the clear and convincing quantum of proof needed to admit the evidence of this collateral crime. Clear and convincing evidence requires more than proof that Durousseau had the opportunity to commit the murder or mere suspicion that he committed the murder. See State v. Norris, 168 So.2d 541, 543 (Fla.1964) (“[M]ere suspicion is insufficient. The proof should be clear and convincing.”). Accordingly, the admission of this collateral crime evidence was in error.
On the other hand, I conclude that there is clear and convincing evidence, independent of the similarities between the collateral crimes and the charged crime, that Durousseau committed the McCallister murder, including evidence that was introduced at trial. Durousseau was identified as being at the crime scene during the small window of time in which McCallister was murdered; Durousseau was identified as hastily leaving the scene; his DNA was found on a condom at the crime scene; he made an anonymous 911 call the next day that gave details about the crime scene; and he denied knowing McCallister (other than having picked her up as a cab fare) when questioned by the police. At trial, Durousseau provided a version of the events that pointed toward McCallister’s boyfriend — the person who found McCal-lister’s body and alerted neighbors — as being the murderer. However, Durousseau’s testimony contradicted that of other witnesses.
Because the testimony regarding all three murders was heard by the jury, I cannot say that the erroneous admission of the collateral crime evidence of the Kilpa-trick murder did not affect the verdict. Even the State conceded at oral argument that an argument for harmless error would be a “tough argument” to make. “This Court has held that the erroneous admis-
sion of irrelevant collateral crimes evidence ‘is presumed harmful error because of the danger that a jury will take the bad character or propensity to crime thus demonstrated as evidence of guilt of the crime charged.’ ” Robertson, 829 So.2d at 913-14 (quoting Castro v. State, 547 So.2d 111, 115 (Fla.1989)). In this case, the Kilpa-trick murder was critical to the State’s argument that it could not just be coincidence that Durousseau had sex with three women shortly before they were murdered. In closing argument, the State stressed the similarities between the crimes and argued: “What are the chances that he could have sex with three women, they all show up dead, and the deaths are all similar, the scenes are all similar, and the conduct is all similar?” Therefore, I conclude that the erroneous admission of the Kilpatrick murder evidence undeniably affected the verdict.
For all these reasons, I respectfully dissent.
QUINCE, J., concurs.