PER CURIAM.
Roy Lee McDuffie seeks review of his convictions and sentences for two counts of first-degree murder, one count of robbery with a firearm, and one count of false imprisonment with a firearm. Counsel originally filed a brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and Mr. McDuffie filed a pro se brief. Upon review of the record, we ordered supplemental briefing on five issues: (1) whether the trial court abused its discretion by denying Mr. McDuffie’s pretrial motion to test for the presence of DNA on the duct tape that bound one of the victims; (2) whether the trial court abused its discretion by limiting Mr. McDuffie’s cross-examination of witness Ted Teixeira; (3) whether the trial court abused its discretion by denying Mr. McDuffie’s motion for mistrial made after a witness referenced the “first trial”; (4) whether the trial court erred by admitting collateral bad act evidence under the guise of allowing the State to prove motive; and (5) whether the trial court erred by denying Mr. McDuffie’s motion for judgment of acquittal.
We have thoroughly reviewed the extensive record in this case, as well as the briefs filed by counsel, the State, and Mr. McDuffie. Having done so, we affirm Mr. McDuffie’s convictions and sentences. We write only on issue four to explain why the trial court’s error was harmless in this case.
Mr. McDuffie was charged with two counts of first-degree murder, one count of robbery with a firearm, and one count of false imprisonment with a firearm based on events that occurred on October 25, 2002. At that time, Mr. McDuffie was a manager trainee for Dollar General. On the evening of October 25, 2002, he was scheduled to close the store along with Janice Schneider and Dawniell Beauregard. Witnesses placed all three in the store at its 8:00 p.m. closing time. Sometime around 10:30 p.m., Schneider’s husband became concerned when she had not arrived home, and he went to the store. Upon discovering the lights on in the store and Schneider’s car still parked in the lot, he contacted the store manager. When the store manager arrived, he and Schneider’s husband discovered Schneider and Beauregard bound with duct tape in the back room of the store. Both women suffered deep knife wounds and both had been shot. The proceeds from the store safe were missing. Other than the horrific scene in the back room, nothing in the store appeared to be disturbed.
The police subsequently developed Mr. McDuffie as a suspect. In addition to knowing that Mr. McDuffie was the last person seen in the store with both women, the police discovered that Mr. McDuffie, who had been in deep financial straits, was seen in the days after the murders with “wads” of cash. He also purchased a number of money orders and paid a number of delinquent bills.
Ultimately, the State’s theory at trial was that Mr. McDuffie had murdered Schneider and Beauregard so that he could steal the money from the Dollar General safe. To that end, the State introduced evidence that Mr. McDuffie was about to be evicted from his rental home and that his landlord was seeking a judgment *777 against him for unpaid rent. The State also introduced evidence that Mr. McDuf-fie had signed a lease for a new rental residence and promised the new landlord a significant deposit in addition to the first month’s rent. The State called the new landlord to testify that Mr. McDuffie had told him that there had been a fatality in the family, leaving two children without guardians. Mr. McDuffie told the landlord that he wanted to adopt the children so they would not have to go into foster care and that he wanted to be able to move the children into the new home quickly so that they - could get settled in before too long into the school year. The State also introduced evidence that Mr. McDuffie was behind on his child support payments, had high balances on his credit cards, had a very high unpaid cable bill, and had had his car repossessed.
Through other evidence, the State proved that Mr. McDuffie’s story about the fatality in the family was false. In addition, the State introduced the testimony of another Dollar General employee, Carol Hopkins, who testified that Mr. McDuffie had told her that he was working on the evening of October 25 so that he could learn the proper closing procedures before he started at his new store the following week. However, the Dollar General manager testified that Mr. McDuffie was not scheduled to start at his new store for several additional weeks.
In issue four in this appeal, Mr. McDuf-fie contends that the trial court abused its discretion by admitting an extensive amount of evidence concerning his financial condition and the evidence of his two lies, arguing that this was simply improper evidence of collateral bad acts and improper character evidence. On the record before us, we agree that the admission of some of this evidence was improper. However, when considered in light of the record as a whole, we cannot say that the improper admission of this limited evidence was harmful.
As an initial matter, there is no dispute that the State could properly introduce evidence concerning Mr. McDuffie’s financial condition in an effort to show that he had a financial motive to commit the robbery. See, e.g., Foster v. State, 679 So.2d 747, 753 (Fla.1996) (holding that evidence of defendant’s gambling losses was relevant to show motive and intent to commit robberies). Thus, the testimony concerning Mr. McDuffie’s eviction from his current rental house for nonpayment, the deposit and rent requirements of his new rental house, his other financial obligations, and his job status was relevant and admissible to establish his difficult financial condition and possible motive to steal money from the Dollar General and to commit murders to do so.
However, the State also elicited testimony concerning two lies Mr. McDuf-fie told. The first was the landlord’s testimony concerning the lies Mr. McDuffie told him to explain why he needed to move into the rental house so quickly. The second was store employee Carol Hopkins’ testimony concerning Mr. McDuffie’s explanation for being at the store on the day of the murders. None of this testimony was relevant for any purpose except to show that Mr. McDuffie lied to these individuals on these occasions, and it was thus improper during the State’s case-in-chief.
The character of a person accused of crime is not a fact in issue, and the state cannot, for the purpose of inducing belief in his guilt, introduce evidence tending to show his bad character or reputation, unless the accused, conceiving that his case will be strengthened by proof of good character, opens the door to proof by the prosecution that his character in fact is bad.
*778 Robertson v. State, 829 So.2d 901, 912 (Fla.2002) (quoting Jordan v. State, 107 Fla. 333, 144 So. 669, 669 (1932)). Here, the State offered evidence concerning Mr. McDuffie’s lies during its case-in-chief, before Mr. McDuffie placed his character for truthfulness at issue. At that point, the evidence was irrelevant and inadmissible, and the trial court erred by permitting the State to elicit the testimony.
Given this error, the remaining question is whether the error was harmless. “The harmless error test, as set forth in Chapman [v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.” State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986). As more fully explained:
The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
Id. at 1139.
Here, the State presented evidence that Mr. McDuffie was the last person seen with both victims when they were alive. He had a financial motive for stealing money from the store, and he had ample opportunity to commit the crimes. He was in dire financial straits before the murders, and he appeared flush with funds afterwards. His version of the events that evening was contradicted by established store policies, and his timeline for the evening was contradicted by two witnesses and a McDonald’s surveillance video. Most critically, his partial palm print was found on the inside of the duct tape binding one of the victims.
It is true that the State’s case had some gaps. The timeline established by the State was contradicted to some extent by evidence of the questionable ability of Mr. McDuffie to still be at the store at 9:45 p.m. but in the McDonald’s at 10:34 p.m. with no blood on him. The State’s insistence that the victims would not break store policy to let someone leave early was contradicted by Carol Hopkins’ testimony that they let her leave early that night. There was unidentified female blood on the floor of the back room of the store, and an unidentified hah' found stuck in the duct tape, both of which the State failed to explain. And the State’s evidence concerning the location of Mr. McDuffie’s partial palm print on the duct tape was significantly impeached, as was some of the State’s evidence concerning Mr. McDuf-fie’s financial condition.
Nevertheless, there is no reasonable possibility on this record that the improper admission of the evidence of the two lies told by Mr. McDuffie contributed to his conviction. This is particularly true since the timeline given by Mr. McDuffie to the police on the night of the murders was contradicted by other undisputed evidence, thus showing the jury by other means that Mr. McDuffie was known to lie. There *779 fore, while the admission of this evidence was error, it was harmless.
AFFIRMED.
DAVIS, JR., C.A., VTLLANTI, C.C., and WALLACE, D.A., Associate Judges, concur.