781 So.2d 425 (2001)
Ann Elliott BARBER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-218.
District Court of Appeal of Florida, Fifth District.
February 9, 2001.
Rehearing Denied April 4, 2001.
*426 Robert R. Berry and Gregory W. Eisenmenger of Eisenmenger & Berry, P.A., Melbourne, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, J.
Ann Elliott Barber appeals her conviction for aggravated child abuse and claims that the trial court erred by allowing Williams rule[1] evidence to prove identity, by failing to require the State to present pre-trial evidence of the similarity of the collateral offenses, and by allowing the evidence of the collateral crime to become a feature of the trial. We find no error and affirm.
Barber worked at a daycare center where two infants entrusted to her care became critically ill with similar symptoms within days of each other, had to be hospitalized, and were eventually diagnosed as having injuries consistent with "Shaken Baby Syndrome." The facts leading to the injuries of the victim in this case began on the morning of February 5, 1998, when Baby Devin's mother took her healthy four-month-old boy to the daycare center where he was placed in the care of Barber. Devin's mother visited him at noontime and became concerned about his behavior; he seemed abnormally unhappy. She took him home where he slept most of the day and awoke lethargic. That evening she heard popping noises emitting from his back which she attributed to crepitus and noticed red spots developing in the white portion of both of his eyes. The following day Devin began projectile vomiting after each feeding, additional red spots appeared in his eye, and yellow rings began to appear around his eyes. Medical help was obtained and medicine administered, but trauma was not suspected at the time.
Devin improved enough to be returned to the daycare center on February 10, 1998, and again he was entrusted to Barber's care. When Devin's mother picked him up that afternoon, she found him in another worker's arms. He was vomiting, lethargic, and warm. Three days later he was transported to the Arnold Palmer Hospital for Women and Children after continued vomiting. He was irritable, bruises appeared on his face and eyelid, and he had a high platelet count, which is a possible sign of internal bleeding. Physicians found abnormal fluid beneath the *427 skull, nine rib fractures, and an injured right tibia which appeared to be the result of twisting. A physician from Arnold Palmer testified that the abnormal brain fluid and rib injuries were caused by shaking trauma to the head and the tibia injury was caused by a traumatic, violent twisting of the leg. The physician further opined that the injuries occurred around February 5 and a second injury occurred between February 9 and 11.
The collateral offense testimony involved Baby Alexis who was also almost four-months-old when her mother took her healthy and happy baby to the same daycare center on February 6, 1998, and entrusted her to the care of Barber. When the mother arrived at the center later in the day, she found her baby pale and nonresponsive. Emergency personnel had been called to the daycare center because Alexis had actually stopped breathing and was revived by Barber through CPR. Alexis' mother recounted that her daughter was fussy, uncomfortable, and cried when her legs were lifted. Alexis was rushed by ambulance to a hospital where she spent three days as a patient. She appeared to be recovering and was again returned to the daycare center on February 13, looking better and happy. However, on February 17, while at the daycare center in the care of Barber, Alexis' mother re-visited the center that morning where Barber reported that Alexis had mostly slept and had not eaten. When Alexis' mother arrived at the center that afternoon to pick up her daughter, she found Barber and another worker huddled over her daughter who was unresponsive and having difficulty breathing. Alexis' body was stiff and would shake at times.
Alexis was taken to an emergency room and transported to Arnold Palmer the next day where it was determined that she had fifteen injured ribs in the identical position as Devin and at the same stage of healing. She also had a twisted right knee as well as injury to her left tibia and bleeding in the skull. The attending physician concluded that her injuries were caused by two shaking events that took place on February 6 and 17. Alexis also had a period of projectile vomiting and a shunt had to be inserted in her skull to drain fluid.
Testimony at trial placed Barber with the infants during each of the episodes at the daycare center and other workers at the center testified that they had not handled the infants in any manner that could cause the injuries. An investigating officer who interviewed Barber testified that Barber had admitted to becoming frustrated to the point of having to place a child down, walking away, and placing a child in someone else's care. Barber also became upset when the officer questioned her about Alexis, looked as though she was about to cry, and stated that she became frustrated with another child's cries while she had Alexis in her arms.
After Barber was charged with aggravated child abuse causing great bodily harm, the State filed a notice of intent to offer Williams rule evidence. Barber responded with a motion to strike which was denied. However, the trial court ruled that the evidence would be admitted only to prove identity. Barber requested that the State proffer the Williams rule evidence before allowing the jury to hear it and the trial judge deferred ruling until the issue arose in trial. During trial, the proffer was not required and the evidence was admitted.
Barber contends that because no clear and convincing evidence was presented prior to admission before the jury that the former offense was actually committed by her, the court erred by allowing the evidence. We disagree. The State is only required to give notice of its intent to rely on Williams rule evidence pursuant to section *428 90.404(2)(b), Florida Statutes (1997). Barber responded with a motion to strike, which was heard and denied. That was all that was required by the motions that were filed.
Barber was convicted on the basis of circumstantial evidence of the crime for which she was charged in the instant case and collateral evidence of another crime. No witness actually saw Barber mishandle the infants, but the evidence of the collateral crime was allowed by the trial court to show identity. In actuality, it also was evidence of opportunity, intent, absence of mistake, and to show a common plan or scheme. It is difficult if not impossible to limit the facts of this case and most probably any case, in such a way as to single out the factor of identity.
Our supreme court also considered a case in which circumstantial evidence and Williams rule evidence served to convict the defendant. In Buenoano v. State, 527 So.2d 194 (Fla.1988), the defendant was charged with murdering her first husband by poisoning. Reviewing the evidence to determine whether admittance of Williams rule evidence was proper, the court stated:
In the case at bar we find poisoning to be a particularly unusual modus operandi to warrant the introduction of the collateral crimes evidence. When compared, the details of each offense are strikingly similar. All three victims established a close relationship with Buenoano either as her husband, commonlaw husband or fiancé. While living with her, each victim became seriously ill, requiring hospitalization upon displaying similar symptoms. A poison was used in all three cases. Buenoano was the beneficiary under a number of life insurance policies issued on the lives of the three victims and was also entitled to other monetary benefits upon the victims' deaths. These details are not merely evidence of a general similarity between the charged offense and the collateral crimes. "These points of similarity `pervade the compared factual situations' and when taken as a whole are `so unusual as to point to the defendant.'" Kight v. State, 512 So.2d 922, 928 (Fla.1987) (quoting Drake v. State, 400 So.2d 1217, 1219 (Fla.1981)). Under these facts the collateral crimes evidence was admissible to prove motive, opportunity, identity, intent, and absence of mistake, and to show a common plan or scheme.
Id. at 197.
Fortunately, the consequences of injuries in the instant case did not result in death, but we can use the Buenoano opinion to guide us in the application of the Williams rule in the instant case. When compared, the details of each incident during which the infants were injured are strikingly similar. Both victims had been entrusted to Barber's care at the same location. Both victims had almost identical symptoms of injury after being cared for by Barber on the first occasion and their health improved after being removed from her care. Both victims again experienced similar and more serious symptoms upon being returned to Barber for daycare at the same location. Both victims received their injuries within the same short period of time. Witnesses placed Barber in the same room with both victims with no other adult being present. Both infants were diagnosed as having Shaken Baby Syndrome. Barber admitted having handled Alexis in a rough manner to an investigating officer. Witnesses testified that she became frustrated while taking care of infants that demanded attention. These details are not merely evidence of general similarity between the charged offense and the collateral crime. "These points of similarity pervade the compared factual situations and when taken as a whole are so unusual as to point to the defendant." Id. Surely, two four-month-old infants entrusted *429 to the same daycare worker in the same room of the same daycare center and who experience mental status alteration and violent illnesses on two separate occasions as a result of trauma within the same approximate time period are not merely evidence of a general similarity. Those circumstances are so unusual as to point directly to the same daycare worker and we find those circumstances to be relevant.
We also find that the record supports the State's position that it carried its burden under section 90.404(2)(b)1, by furnishing a timely written statement of acts or offenses described with the particularity required of an indictment or information. We disagree with Barber that the proof of the collateral evidence involving Baby Alexis became a feature of the trial. Evidence of the collateral crime was limited to those facts necessary to show relevance and similarity. Defense counsel made appropriate and timely objections that were carefully considered by the trial judge, and to the extent that those matters may have extended the time of trial, it was unavoidable. We find no error and affirm.
AFFIRMED.
SHARP, W. and PLEUS, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959) (codified at section 90.404(2), Florida Statutes (1997)).