BENTON, J.
 

 On this direct appeal from convictions and sentences for aggravated child abuse and child neglect, Alisha Nicole Vice argues the trial court erred in allowing the state to introduce “similar fact evidence” on the purported authority of section 90.404(2)(a), Florida Statutes (2006). We reverse and remand for a new trial.
 

 Dr. Alexa Canady, the pediatric neurosurgeon called to the Intensive Care Unit to treat then three-month-old J.C.H. upon his admission to the hospital on April 5, 2007, described the baby’s injuries as the result of “classic non-accidental trauma,” of a type formerly said to characterize Shaken Baby Syndrome.
 
 [1]
 
 The jury heard evidence that J.C.H. sustained a subdural
 
 *354
 
 hematoma along with hemorrhaging in the back of his eyes; that blood and bruising were found in the right frontal portion of his brain; and that the bleeding appeared to have occurred at different times: some apparently occurred no earlier than three days before he was brought in, while some could have originated any time between March 31 and April 5, 2007.
 

 By all accounts, during the period between March 31 and April 5, 2007, only three individuals were alone with the baby at any one time: Ms. Vice, the baby’s mother; Chris H.,
 
 [2]
 
 the baby’s father; and a next door neighbor who was an occasional babysitter. On April 5, Chris H. picked up the baby from the babysitter around midday. Later, after Ms. Vice joined them at home and heard the sleeping baby inhale “raspy breaths,” Ms. Vice and Chris H. took him to the hospital, where his injuries were diagnosed and treated.
 

 Alerted by the medical authorities to apparent child abuse, the police questioned all three caregivers: Mr. H.,
 
 [3]
 
 the babysitter and Ms. Vice. After Ms. Vice voluntarily submitted to lengthy interrogation, she was charged — despite her consistent denials — with aggravated child abuse (and child neglect).
 
 [4]
 
 When the state filed notice of its intent to rely on evidence of other crimes, wrongs, or acts, as permitted under
 
 Williams v. State,
 
 110 So.2d 654 (Fla.1959), to prove Ms. Vice was the perpetrator, she filed a motion in limine seeking to exclude such evidence. After an evidentiary hearing, the court denied the motion, stating conclusorily:
 

 Evidence of two prior shaking incidents allegedly perpetrated by this defendant upon an infant not the victim in the case w[as] presented. Those two incidents are relevant and probative insofar as issues of identity, opportunity, intent and absence of mistake or accident.
 
 Barber v. State,
 
 781 So.2d 425 ([Fla. 5th DCA 2001]);
 
 Washington v. State,
 
 737 So.2d 1208 ([Fla. 1st DCA 1999]).
 

 Specifically, the state sought to prove that six years earlier Ms. Vice’s then-husband and then-mother-in-law witnessed her shaking — but not injuring — a child born of that marriage. In the course of what proved to be a four-day trial, the state put this evidence on to show that it was Ms. Vice — not Mr. H. (or the babysitter) — who was responsible for J.C.H.’s injury.
 

 The
 
 Williams
 
 rule evidence consisted of testimony by Daniel Cooper (Ms. Vice’s former husband) and Melissa Lindsey (Daniel Cooper’s mother). Mr. Cooper (who acknowledged he had been an abusive husband whose abuse contributed to the dissolution of his marriage to Ms. Vice) testified at trial that, when he arrived home from work one day in early 2001,
 
 *355
 
 Ms. Vice “had [the child] up in the air, like, in front of her face, about like this, and was shaking him rapidly, screaming at him to shut up while he was crying.” Mr. Cooper did not report the incident to the authorities and testified that the child did not suffer any harm.
 

 Ms. Lindsey testified at trial that, one day in the spring of 2001 when she approached their apartment, she saw Ms. Vice through the curtains “sitting with [the infant] on the couch and she was shaking him violently” close to her face while yelling at him to shut up. Ms. Lindsey did not report the incident to the authorities at the time, and testified that the child did not require medical attention.
 

 “A trial court’s decision to admit collateral crime or
 
 Williams
 
 rule evidence is reviewed for an abuse of discretion. However, ‘[t]he admission of improper collateral crime evidence is presumed harmful error because of the danger that a jury will take the bad character or .propensity to commit the crime as evidence of guilt of the crime charged.’ For the harmless error rule to apply, the State must prove that there is “‘no reasonable possibility that the error contributed to the conviction.’ ” ”
 
 Henrion v. State,
 
 895 So.2d 1213, 1216 (Fla. 2d DCA 2005) (citations omitted).
 

 “Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence- is relevant solely to prove bad character or propensity.” § 90.404(2)(a), Fla. Stat. (2006).
 
 See Williams,
 
 110 So.2d at 659-60 (“Our view of the proper rule simply is that
 
 relevant
 
 evidence will not be excluded
 
 merely
 
 because it relates to similar facts which point to the commission of a separate crime. The test of admissibility is relevancy. The test of inadmissibility is a lack of relevancy.” (emphasis in original)).
 
 See also
 
 Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 404.9 at 221 (2009 ed.). The evidence in the present case was “relevant solely to prove bad character or propensity.” § 90.404(2)(a), Fla. Stat. (2006).
 

 Evidence that does not logically tend to prove a fact in issue (other than propensity) is irrelevant and inadmissible.
 
 See Williams,
 
 110 So.2d at 662 (“[W]e emphasize that the question of the relevancy of this type of evidénce should be cautiously scrutinized before it is determined to be admissible.”).
 

 Before admitting
 
 Williams
 
 rule evidence, it is incumbent upon the trial court to make multiple determinations, including whether the defendant committed the prior crime, whether the pri- or crime meets the similarity requirements necessary to be relevant as set forth in our prior case law, whether the prior crime is too remote so as to diminish its relevance, and finally, whether the prejudicial effect of the prior crime substantially outweighs its probative value.
 

 Robertson v. State,
 
 829 So.2d 901, 907-08 (Fla.2002) (footnotes omitted). In the present case, the trial court did not make any of the “multiple determinations” required by
 
 Robertson.
 

 The trial court allowed the state to put on evidence of prior shakings to prove “identity, opportunity, intent and absence of mistake or accident,” without any explanation of how the
 
 Williams
 
 rule evidence would logically tend to prove anything properly at issue to do with the events of March 31 through April 5, 2007. The trial court made no finding as to whether Ms. Vice shook the other baby; as to whether
 
 *356
 
 what occurred was sufficiently similar
 
 [5]
 
 to be somehow relevant to the charged offense; as to whether the conduct with another baby six years earlier was too remote to be relevant; or, as
 
 -Robertson
 
 also requires, as to whether the prejudicial nature of the evidence of prior abuse outweighed its probative value, if any, in the present case. 829 So.2d at 907-08.
 

 The threshold issue in the present case is relevance.
 
 See
 
 Ehrhardt,
 
 supra,
 
 § 404.9, at 221-22 (“Evidence which is admissible under this theory is frequently called ‘similar fact evidence.’ However, evidence of collateral, crimes or acts is admissible under section 90.404(2)(a) not because it is similar to the crime or act in issue, but because it is relevant to prove a material fact or issue in the instant case other than the defendant’s propensity or bad character. Thus, it can be misleading to refer to this evidence as ‘similar fact evidence’ because the similarity of the facts involved in the collateral act or crime does not ensure relevance or admissibility. Similarly, evidence of collateral crimes may be relevant and admissible even if it is not similar.” (footnotes omitted)). The identity of the perpetrator was a material fact in issue, to be sure. But to be admissible to show identity, similar fact evidence must prove a prior act or crime that shares a distinctive modus operandi with the offense charged:
 
 [6]
 

 The probative value comes from the fact that the collateral crimes were committed with a unique modus operandi which was the same as that used in the crime in question; therefore, it may be inferred that the same person committed both crimes. When that evidence is coupled with an identification of the defendant as the person who committed the prior crime, the evidence is relevant. Evidence that the defendant has committed prior crimes, without evidence of a similar unique modus operandi, does not raise the same inference. Only when the court can find that modus operandi is so unusual so that it is reasonable to conclude that the same person committed both crimes is the evidence of the prior crime admissible to prove identity.
 

 Ehrhardt,
 
 supra,
 
 § 404.10, at 242-43 (footnotes omitted). Here the trial court abused its discretion by admitting evidence of the alleged prior shakings to show identity. The state’s own witness explained
 
 *357
 
 that different types of abuse could have caused J.C.H.’s injuries.
 

 In the present case, there are no “points of similarity” that “when taken as a- whole are ‘so unusual as to point to the defendant.’ ”
 
 Barber v. State,
 
 781 So.2d 425, 428 (Fla. 5th DCA 2001) (quoting
 
 Buenoano v. State,
 
 527 So.2d 194, 197 (Fla.1988)). In fact, the state was unable to establish how the injury occurred. In contrast to the charged offense, the shakings of the other child did not cause any injury or result in any need for medical attention. This is not a case where two infants sustained “strikingly similar” injuries and symptoms within the same short period of time.
 
 Compare Barber,
 
 781 So.2d at 428. Six years separated the prior incidents and the offense charged.
 

 Intent and the absence of a mistake or accident are also material facts at issue in the present case. To convict Ms. Vice of aggravated child abuse, the jury had to find that she acted “willfully,” or “knowingly, intentionally, and purposely.” “Evidence of similar acts that contradict an innocent explanation of the defendant’s act is admissible. The more frequently an act is done, the less likely it is that it is innocently done.” Ehrhardt,
 
 supra,
 
 § 404.12, at 246-47 (footnote omitted). But, as our supreme court has made clear, “substantial similarity of crimes is a requirement when the evidence is sought to be admitted for the specific purpose of establishing absence of mistake or accident.”
 
 Robertson,
 
 829 So.2d at 909.
 

 Evidence that Ms. Vice shook a different child six years earlier without injuring him does not meet this similarity requirement. In the absence of any evidence of injury or the need for medical treatment attributable to the two shakings six years earlier, the “similar fact evidence” adduced below was not relevant to show intent or absence of mistake or accident. The fact that Ms. Vice shook a baby six years earlier without injuring the baby would, if anything, tend to prove any shaking of J.C.H. was not intended to injure and that no injury was anticipated. Because the “similar fact evidence” did not “contradict an innocent explanation” of J.C.H.’s injury, Ehrhardt,
 
 supra,
 
 § 404.12, at 246, or share any “substantial similarity” with the charged offense,
 
 Robertson,
 
 829 So.2d at 909, the trial court abused its discretion in admitting the similar fact evidence to prove the absence of mistake or accident.
 

 Finally, opportunity was not in issue. As his mother, Ms. Vice spent a lot of time with J.C.H., according to the evidence. The evidence was also uncontroverted that she was alone with J.C.H. more than once during the five-day period in which he was injured.
 
 See Thomas v. State,
 
 599 So.2d 158, 162 (Fla. 1st DCA 1992) (“If there is no bona fide dispute over a material fact that the similar fact evidence is offered to prove, then the probative value of such evidence necessarily has significantly less importance than its prejudicial effect, and the evidence should be excluded.... ”). With clear and undisputed evidence on the point, the trial court abused its discretion by allowing the state to introduce evidence of events six years in the past to prove opportunity, even if it viewed such evidence as somehow probative.
 

 In sum, the testimony of appellant’s ex-husband and his mother about shaking another baby six years earlier was not relevant to any material fact properly in issue, and the trial court erred by allowing the state to adduce the testimony. Error of this kind is presumed harmful. It may be considered harmless only if the state demonstrates there is no reasonable possibility that it affected the jury’s verdict.
 
 See Henrion,
 
 895 So.2d at 1216. Given the
 
 *358
 
 paucity of probative evidence, there is a reasonable possibility that admission of the similar fact evidence contributed to the conviction. The state has not demonstrated otherwise.
 

 Reversed and remanded.
 

 KAHN and ROBERTS, JJ., concur.
 

 [1]
 

 . Dr. Canady testified that neurologists no longer use the term "Shaken Baby Syndrome” because it "implies a certain way in which the injury happens,” which may be inaccurate in a given case. Neurologists believe, she said, that the same type of injury caused by shaking a baby can also be caused, for example, by forcefully striking a baby against some hard surface.
 

 [2]
 

 .Mr. H.'s testimony suggested injuries may have occurred on April 1, 2007, when he left the baby unattended while he retrieved a grill. On April 1, Ms. Vice was at home with the baby while Mr. H. went to a party at the babysitter’s house. Eventually, Mr. H. came home to watch the baby so Ms. Vice could attend the party. Still later Mr. H. "ran over” to the babysitter's house to retrieve his grill and, upon returning home, found J.C.H. "hanging half way out of the swing ..., kind of stiff as a board, red as a beet ..., like he was having some kind of seizure,” he testified.
 

 [3]
 

 . At trial, Mr. H. testified that on March 26, 2007, while holding J.C.H., he slipped on the tile in the bathroom and "fell forward with him and his butt hit the edge of the tub.” Dr. Canady testified that this type of fall would not cause a subdural hematoma "unless the baby strikes [its] head on something.”
 

 [4]
 

 . The child neglect charge alleged that Ms. Vice failed to inform medical personnel (when J.C.H was admitted to the hospital on April 5) of the "suspected seizure" on April I to which Mr. H. (who was also present at the hospital on April 5) testified at trial.
 

 [5]
 

 . The present case does not involve any allegation of sexual molestation. Although the law governing
 
 Williams
 
 rule evidence has been altered in the context of child sexual molestation cases, see § 90.404(2)(b)1., Fla. Stat. (2006) ("In a criminal case in which the defendant is charged with a crime involving child molestation, evidence of the defendant's commission of other crimes, wrongs, or acts of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.”);
 
 Easterly v. State,
 
 22 So.3d 807, 814 (Fla. 1st DCA 2009) (“The Legislature has adopted a relaxed standard of admissibility for similar fact evidence in child molestation cases.”), this less stringent rule of exclusion does not extend to child abuse cases like the present case that do not involve sexual abuse.
 

 [6]
 

 . The jury was instructed that to prove the crime of aggravated child abuse the state had to show two elements beyond a reasonable doubt: (1) that Ms. Vice "knowingly or willfully committed child abuse upon J.C.H. and in so doing caused great bodily harm, permanent disability, or permanent disfigurement" and (2) "J.C.H. was under the age of 18 years.” The jury was instructed that "willfully” means "knowingly, intentionally, and purposely.” The jury was informed that "child abuse” means "the intentional infliction of physical or mental injury upon a child or an intentional act that could reasonably be expected to result in physical or mental injury to a child.”