DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**DWIGHT PARKER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D10-4653

[July 23, 2014]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Cynthia Imperato, Judge; L.T. Case No. 07-5039 CF10A.

Michael Hursey, Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Monique Rolla, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

Dwight Parker appeals his convictions for multiple drug-related charges. We hold that the admission of gun-related evidence was error and reverse and remand for a new trial. Our reversal on this one issue renders most of the remaining issues moot and others lack merit in the first instance. However, some points raised in Parker's cumulative error argument have merit and therefore in the event they arise on retrial, we address them.

The charges in this case arose from a routine traffic stop. After an officer saw what he believed to be the stock of a gun tucked between the seats of the vehicle Parker was driving,[1] Parker was removed from the vehicle for officer safety. In fact, the object observed by the officer was a small semi-automatic weapon and the firearm was secured. After it came to light that Parker was a convicted felon, he was arrested for being in unlawful possession of a firearm.

---

[1] The vehicle did not belong to Parker.

While the officers were conducting an inventory search of the vehicle, they discovered pills and cocaine within a container designed to look like a can of foot deodorant spray. As a result, Parker was charged—in addition to the felon in possession of a firearm charge—with trafficking in oxycodone, possession of cocaine with intent to sell or deliver, possession of alprazolam, and possession of drug paraphernalia. Parker was also charged with misdemeanor possession of marijuana, based on marijuana found in the police vehicle in which Parker was transported after his arrest. Prior to trial, the firearm count was severed, as it clearly should have been.

In a pre-trial hearing, the court addressed Parker's motion to exclude any evidence related to the gun found in the car Parker was driving. Defense counsel argued that any probative value would be outweighed by the prejudicial effect. Although the trial court initially granted the motion in limine, it later reversed itself and agreed with the state that the evidence was necessary to explain why the car was searched. The court ruled that the state could present evidence that Parker was arrested "for having the gun," but that there should be no reference to Parker's convicted felon status.

During trial, the officer who first saw the gun identified it as the one he removed from the car. Over defense counsel's repeated objections, the trial court not only admitted the gun into evidence, but allowed it to be published to the jury. The same officer was allowed to testify that the weapon was located where Parker was observed placing his hand after he was stopped. Another officer testified that Parker was arrested for a firearm charge after the gun was removed from the vehicle. Defense counsel's motion for mistrial was denied, but the trial court gave the jury the following curative instruction: "[Y]ou're not to consider the fact that the defendant was arrested for a gun charge. It is not one of the charges for you to consider in this case, and it should have no bearing on your decision about the crimes that he's been charged with."

Both before the trial court and on appeal, the state argued that evidence of the semi-automatic weapon found in the car was essential to provide the jury with a complete understanding of what began as a routine traffic stop. Even though a discussion of the gun's discovery between the car seats would result in the improper admission of other bad conduct, the state convinced the trial court that it was impossible for the state to present its case without the gun-related testimony.

Inextricably Intertwined Evidence

2

The Florida Supreme Court has explained that evidence of bad conduct can be admissible if inextricably intertwined with the charged offense and necessary for a complete description thereof:

> Occasionally when proving the elements of a crime, it becomes necessary to admit evidence of other bad conduct to adequately describe the offense or connect the elements of the offense because the charged offense and the other conduct are significantly linked in time and circumstance. In other words, this evidence is admissible because it is a *relevant* and *interwoven* part of the conduct that is at issue. Where it is impossible to give a complete or intelligent account of the criminal episode without reference to other uncharged crimes or bad conduct, such evidence may be used to cast light on the primary crime or elements of the crime at issue. However, when there is a clear break between the prior conduct and the charged conduct or it is not necessary to describe the charged conduct by describing the prior conduct, evidence of the prior conduct is not admissible on this theory.

*Wright v. State*, 19 So. 3d 277, 292 (Fla. 2009) (emphasis in original) (citations and quotation marks omitted). *See also Griffin v. State*, 639 So. 2d 966, 968 (Fla. 1994) ("[E]vidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, . . . . is admissible . . . because 'it is a relevant and inseparable part of the act which is in issue. . . . [I]t is necessary to admit the evidence to adequately describe the deed.'") (citations omitted).

"Evidence is inextricably intertwined if the evidence is necessary to (1) adequately describe the deed; (2) provide an intelligent account of the crime(s) charged; (3) establish the entire context out of which the charged crime(s) arose, or (4) adequately describe the events leading up to the charged crime(s)." *McGee v. State*, 19 So. 3d 1074, 1078 (Fla. 4th DCA 2009) (quoting *Dorsett v. State*, 944 So. 2d 1207, 1213 (Fla. 3d DCA 2006)). However, "[e]ven when inextricably intertwined, [collateral crime evidence] cannot become a feature of the trial." *Wright*, 19 So. 3d at 293 (citation omitted).

Gun-Related Evidence

3

Trial courts must be particularly cautious and vigilant when considering the question of admissibility of gun-related evidence.

We recognize that gun-related evidence has been held to be admissible as inextricably intertwined in cases involving drug charges. *See, e.g., Monestime v. State*, 41 So. 3d 1110, 1112-13 (Fla. 3d DCA 2010); *Vail v. State*, 890 So. 2d 373, 376 (Fla. 3d DCA 2004). However, in this matter, the court allowed the state to go far afield of what was necessary to present "an intelligent account of the crime(s) charged."

It was not necessary for the gun found in the car Parker was driving to be admitted into evidence. It was even more unnecessary for the gun to be published to the jury, and there was no rational need for the jury to hear that Parker was arrested for a gun-related charge and that he attempted to reach for the gun while in the vehicle. Quite evidently, it would have been sufficient for the jury to hear that Parker was removed from the vehicle because the officer spotted what he believed to be a gun, and that the officers then conducted a permissible search. *See McCall v. State*, 941 So. 2d 1280, 1282-84 (Fla. 4th DCA 2006) (finding that where the defendant was charged with gun-related charges after being found in a stolen car with a gun, it was not necessary for the jury to hear that the car was stolen in order to understand how the crime came to light). Here, the state was permitted to cross a clearly protected line of inquiry which was then exacerbated by giving the weapon featured billing during the trial.

## Harmless Error

Harmless error analysis applies to this type of error. *Thomas v. State*, 885 So. 2d 968, 975-76 (Fla. 4th DCA 2004). It cannot be said the admission of the gun-related evidence in this case was harmless. Because the gun was introduced into evidence, published to the jury, and otherwise made a feature of the trial, it became a feature which did nothing more than invite additional focus on evidence that should not have been admitted in the first instance. Furthermore, the curative instruction did not render the error harmless. *See Freeman v. State*, 630 So. 2d 1225, 1226-27 (Fla. 4th DCA 1994) (finding that erroneous admission of testimony regarding collateral crime of drug dealing was not harmless where the case hinged on a close factual question, and curative instruction was ineffective to overcome the prejudicial effect).

## Additional Issues

Because of our holding, most of the remaining issues are rendered

moot.[2]  However, in light of our remand for a new trial, we find it prudent to address three other issues raised by Parker which are meritorious.

First, Parker argues on appeal that the trial court erred in failing to instruct the jury on simple possession for the trafficking charge.  The discussions at sidebar leave it unclear as to whether Parker preserved this issue.  Nonetheless, in the event he clearly requests the instruction on retrial, the trial court would be required to give it.  *See Amado v. State*, 585 So. 2d 282, 283 (Fla. 1991) (holding that where the defendant is charged with trafficking by multiple methods including possession, the trial court must give an instruction on simple possession if requested to do so, even if there is no real dispute that the defendant possessed a trafficking amount).

Second, we agree with Parker that the court erred in excluding, on relevancy grounds, documentation purportedly corroborating a defense witness' testimony that the pills found in the container belonged to the witness, and that it was the defense witness who was taking pain medication.  As part of his defense, Parker presented the testimony of his housemate, James Rich, who testified that the foot deodorant spray container and pills within it belonged to him.  The defense sought to admit Rich's prescription for various types of painkillers, some of which were the type found in the container.  The defense also sought to introduce a letter indicating Rich had visited a pain clinic in February and April 2007, and was taking prescription pain medication.  The court found the documents were not relevant to the drugs found in the vehicle Parker was driving.  This was error.  "[T]he question of what is relevant to show a reasonable doubt may present different considerations than the question of what is relevant to show the commission of the crime itself.  Where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission."  *Neiner v. State*, 875 So. 2d 699, 700 (Fla. 4th DCA 2004) (citations and internal quotation marks omitted).  Under this standard, the excluded evidence was relevant to Parker's defense theory, part of which was that the drugs belonged to Rich.  During any retrial where the same defense theory is presented, these documents should not be excluded based on a relevance objection.[3]

---

[2] The denial of Parker's motion to suppress is not moot, but we find it has no merit.

[3] On appeal, the state argues the documents were inadmissible hearsay and not properly authenticated.  We do not address these arguments as the court's ruling was not based on anything other than relevance, and the hearsay and authentication issues were not developed below.

Finally, Parker argues on appeal that the court erred in admitting evidence that about two weeks before Parker was arrested for the charges in this case, a similar fake container was found in his home. During a hearing on the motion to admit the evidence, a detective testified that she executed a search warrant on Parker's home and found what appeared to be a container of cheese curls in Parker's bedroom, but was actually a fake can like the one found in the vehicle Parker was driving. The can contained marijuana residue. The detective assumed the bedroom was Parker's based on "clothing" and "paperwork," but she did not elaborate on the genesis of these assumptions. The trial court ruled the evidence was admissible *Williams*[4] rule evidence, but we must find to the contrary. The evidence was not relevant to show identity, as that was not an issue in the case. Additionally, the evidence did not refute Parker's defense, which essentially denied knowledge and pinned ownership on Rich. The fact that there was a similar fake can in the house Parker shared with Rich "did not contradict an innocent explanation" of Parker's possession of the drugs nor does this evidence "share any substantial similarity with the charged offense." *Vice v. State*, 39 So. 3d 352, 357 (Fla. 1st DCA 2010) (citations and internal quotation marks omitted).

Conclusion

Based on the erroneous admission of gun-related evidence, we have no choice but to reverse and remand for a new trial.

*Reversed and remanded for new trial.*

TAYLOR and GERBER, JJ., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**

---

[4] *Williams v. State,* 110 So. 2d 654 (Fla. 1959).