SMITH, Senior Judge.
In this appeal, the employer/carrier (E/C) seek reversal of a workers’ compensation order in which the Judge of Compensation Claims (JCC) found that the claimant, a firefighter, is entitled to the presumption of compensability set forth in section 112.18(1), Florida Statutes (1991)[1]. We affirm.
The claimant, Arthur Carpentieri, was employed by the City of Clearwater as a firefighter from October, 1963 until his retirement. He suffered a heart attack on November 17, 1991, one day prior to the date his retirement was accepted and his pension awarded by the City Commission of Clear-water sitting as the Trustees of the Employees’ Pension Fund (Trustees). Carpentieri’s statement of resignation and request for his retirement pension was submitted by him to the Pension Advisory Committee (PAC) on October 31, 1991, and was approved by the Trustees on November 18, 1991. It is undisputed that the effective date of his retirement was August 31, 1992. This extended termination date was the result of Carpen-tieri’s selection of the option to be paid for his accumulated vacation time, both deferred and currently accrued, together with unused sick leave time, and days known as “floating holidays”. Thus, he continued to receive his full-time salary until such time as these accumulated benefits “ran out” on August 31, 1992. It was not determined when Carpen-tieri turned in his uniforms and equipment, but it is undisputed that he performed no firefighter duties after October 31, 1991. It is also undisputed that at the time of his attack, Carpentieri was classified as a city employee, and was carried on the city rolls as a firefighter, receiving a regular salary check with standard deductions, and that he remained eligible for certain raises.
*359 The parties are in total disagreement concerning Carpentieri’s exact status as an employee or firefighter on the date of his heart attack. The testimony and arguments presented below by both sides sought to resolve this issue by attempting to attach more, or less, significance to the various steps taken by Carpentieri, PAC, and the Trustees in the retirement process. Certain facts are uncontested: an employee desiring to retire from the City on a regular “longevity” pension submits a pension request form to the PAC; the PAC reviews the request and makes a recommendation to the City Commission sitting as the Trustees; and the Trustees make the final decision to grant the pension. The Trustees granted Carpentieri’s application for retirement and pension at their regular meeting on November 18, 1991, the day after Carpentieri’s heart attack.
Carpentieri’s claim for benefits was defended by the E/C on grounds, among others, that his heart attack was not work-related. After an evidentiary hearing, the JCC entered an order finding that at the time of his heart attack Carpentieri was an employee of the City entitled to the presumption of the statute, section 112.18(1). This appeal followed.[2]
Extensive testimony was presented below both by the E/C and Carpentieri in an attempt to define with precision Carpentieri’s status as an employee of the City between the date he turned in his retirement request and the date his retirement was accepted by the Trustees. Witnesses for the E/C attempted to establish that Carpentieri was on an “inactive” status after he submitted his resignation request contending, among other things, that Carpentieri was no longer subject to recall for firefighting duties after he turned in his retirement request. According to these witnesses, the claimant’s receipt of full pay as an employee during the period from October 31, 1991 (the date his retirement request was submitted) and November 17, 1991 (the date of claimant’s heart attack), was due solely to Carpentieri’s election to “run-out” his deferred and accrued vacation time, his sick leave, and the “floating holiday” pay. Had the claimant elected to receive a lump sum cash payment in lieu of monthly payments for these benefits, they asserted, he could not be said to have been on a “vacation” status on the date of his heart attack. The E/C’s witnesses further opined that even though there was no written policy, rule, ordinance or contractual agreement, an employee who has elected retirement for years of service, such as claimant, is not subject to recall for active duty as a firefighter under any circumstances.
Witnesses for Carpentieri included the Fire Chief, who maintained that the claimant, or any other firefighter, would be subject to recall in an emergency notwithstanding a pending but unaccepted retirement request. Needless to say, the evidence was in conflict as to just what would lawfully be required of the claimant in the way of performing firefighting duties after he turned in his retirement request. So far as the evidence discloses, there had been no prior occasion when a determination had to be made as to the City’s ability to recall a firefighter to duty after his retirement request had been submitted. The witness occupying the position of highest authority with the City, among those who testified, was frank to admit that it was not known exactly what would happen if the PAC or the Trustees denied the pension request and the employee desired to return to work, since this had never happened. Another witness for the E/C was of the opinion that the employee would be allowed to return to work, but the witness could think of no situation in which a person who qualified for a longevity pension would be denied that pension.
In a lengthy order, the JCC carefully recited and analyzed the testimony of each witness in great detail. The JCC finally concluded that “[b]y all accounts, the claimant remained employed as a fireman for the City of Clearwater until the effective date of his *360 retirement, August 31, 1992.” The JCC reasoned that although the claimant had applied for his pension and last worked an actual shift for the fire department on October 31, 1991, his actual pension was not approved by the pension authorities until November 18, 1991, one day after his heart attack. The JCC further noted the testimony of the Fire Chief that Carpentieri would have been subject to recall in the event of a need until such time as his pension was approved. While noting the holding of this court in Smith v. City of Miami, 552 So.2d 245 (Fla. 1st DCA 1989) (a firefighter for the City of Miami who had been retired for 18 months when he suffered a heart attack was not entitled to the presumption of the statute), the JCC reasoned that Carpentieri, at the time of his heart attack, was an active employee of the City of Clearwater Fire Department. The JCC acknowledged that the testimony of employees of the City would indicate, based upon the City’s unwritten policy, that the claimant was no longer an “active employee” as of the date he filled out and submitted his retirement request. The JCC reasoned that this evidence — which we note was presented essentially in the form of opinion testimony— was not competent substantial evidence that the claimant was retired as of the date of his heart attack. “It is clear,” stated the JCC, “that the claimant’s retirement could not be effective until the Commission approved him for retirement.” The JCC concluded, therefore, that on November 17, 1991, the date of Carpentieri’s heart attack, Carpentieri “was still an active employee of the City of Clear-water and was an active fireman.” The JCC specifically declined to address whether or not Carpentieri would still be considered an active employee of the City between the date his retirement was accepted, and the effective date of his retirement, i.e., August 31, 1992, because that finding was not necessary to the conclusion reached in this case.
Much of the E/C’s argument on appeal focuses on the meaning of the terms “active service” and “active duty status,” their contention being that these terms refer to one who is actively on the job and performing the customary work of the job, as opposed to one who “terminates inactive employment.” Further, the E/C argues, the term “active work” is not synonymous with the word “employment,” and a person may cease active work, and yet remain an employee.
One might well agree with the E/C’s conclusions based upon the terminology employed in their analysis if this case dealt with these terms in connection with issues similar to those involved in cases from other jurisdictions cited by the E/C.[3] We do not find these arguments persuasive, nor do we find the authorities cited applicable to the issue before us. Rather, we find that the issue before the JCC in this case should be framed simply in terms of whether Carpentieri was or was not “retired,” when he had his heart attack. See Smith v. City of Miami, supra.
We find that ample evidence and sound legal principles support the JCC’s conclusion that, unlike the Smith claimant, Car-pentieri was not “retired” until his retirement was accepted and his pension was awarded on the day following his heart attack. To deny Carpentieri the benefit of the presumption based upon the E/C’s narrow construction of the statute would be not only grossly unfair, in view of Carpentieri’s 28 years of service as a firefighter for the City, but would also be contrary to what we believe to be the intent and purpose of the statute itself.
Carpentieri’s own testimony eloquently, though possibly unintentionally, described the aspects of a firefighter’s job that gave rise to the statutory presumption. He stated:
*361 Well, it’s extremely strenuous. I mean, in fires the heat alone is enough to — it’s just the whole environment. Between the gases, the fire, the heat, the emotional trauma, the knowing that there may possibly be people in there, it’s kind of looking after your fellow firefighters. It’s pretty — in fact, it’s extremely intense.
It is clear that it was in recognition of the special hazards and stresses placed upon firemen “during their career,” as pointed out by the court in Caldwell v. Division of Retirement, etc., 372 So.2d 438, 440-441 (Fla.1979), that the legislature enacted the statutory presumption, and the statute should be interpreted in a manner consistent with the beneficial purposes intended. The JCC’s interpretation which found Carpentieri entitled to the presumption because he was a duly employed member of the fire department until such time as he was officially retired appears more closely aligned with the legislative intent than the result urged by the E/C.
Accordingly, the order appealed is affirmed, and this cause is remanded for an award of workers’ compensation benefits in such amounts and to the extent as may be determined by the JCC.
ALLEN and DAVIS, JJ., concur.

. Section 112.18(1), Florida Statutes (1991), provides:
Any condition or impairment of health of any Florida municipal ... fireman caused by ... heart disease ... resulting in total or partial disability or death shall be presumed to have been accidental and to have been suffered in the line of duty unless the contrary be shown by competent evidence.

. In order to expedite resolution of the case below, the parties stipulated to bifurcate the hearing by first presenting the single issue of whether claimant was entitled to the statutory presumption, with the extent of benefits to be determined in a later hearing. In response to this court’s order questioning jurisdiction, the E/C stipulated that the accident was compensa-ble if claimant was entitled to the statutory presumption. We accepted jurisdiction. See, Fla. R.Work.Comp.P. 4.160(b)(3); Hines Electric v. McClure, 616 So.2d 132 (Fla. 1st DCA 1993).

. Frasier v. Model Coverall Svc., Inc., 182 Mich. App. 741, 453 N.W.2d 301 (1990) (claimant who was not working and receiving workers' compensation disability benefits for torn rotator cuff was not "actively employed” when he applied for and received non-disability retirement benefits, thereby making inapplicable a statute creating a presumption of no loss of earnings or earning capacity when one who is "actively employed” receives non-disability retirement); State v. Bachrach, 175 Ohio St. 419, 25 0.0.2d 438, 195 N.E.2d 803 (1964) (fireman's military service could not be added to years of service as a fireman so as to qualify for pension under statute requiring twenty-five years of "active service” in the fire department); Sheller-Globe Corp. v. Shelter, 413 N.E.2d 318 (Ind.App.1981) (employee's receipt of vacation pay in his final pay check did not extend his employment so as to provide coverage under group insurance policy defining termination of employment as "[cjessation of active work").